THE NATIONAL BUTCHERS AND DROVERS' BANK, Appellant, *v.* CHARLES E. HUBBELL, as Assignee, etc., Impleaded, etc., Respondent.

W. & Co., private bankers in the city of Syracuse, were the correspondents in that city of plaintiff, a banking corporation in New York. Plaintiff forwarded to said firm notes, drafts and checks for collection The course of business was for plaintiff to indorse such paper, making it payable to W. & Co. or order "for coll. for account of" plaintiff, and to enclose in a letter stating that the enclosures were "for collection and credit." The paper was charged to W. & Co. on plaintiff's books and moneys remitted were credited. W. & Co. on receipt credited to plaintiff the paper payable on demand; the portion payable on time was not credited until paid. All protested paper was charged back to plaintiff, with protest fees, and returned. On Thursday of each week W. & Co. remitted to plaintiff the amount standing to its credit, less a percentage for services. In pursuance of this custom for some days prior to December 9, 1884, plaintiff had forwarded paper, a portion of which had been collected by W. & Co., and the moneys received paid out in due course of business. On that day said firm made a general assignment for the benefit of creditors to defendant H., who thereafter received the avails of collections of the residue of said paper and before any notice of plaintiff's claim, in good faith and in pursuance of an order of the County Court directing payment of a dividend upon preferred debts, made such dividend, including therein the moneys so received. Plaintiff had no notice of the application for said order and was not apprised of

the same until after the payment of the dividend. In an action brought, among other things, to recover of H. the amount collected, *held*, that he was not liable for the moneys received and paid out by W. & Co. prior to the assignment, but was liable for the amount of collections he himself received after the assignment; that under the arrangement between plaintiff and W. & Co. that firm acquired no title to the paper so transmitted to it for collection, but the title remained in plaintiff, for whom the firm simply acted as agent; but that when collections were made and received, as to such receipts the relation became that of debtor and creditor, and, therefore, as to the amount collected and paid out by W. & Co. prior to the assignment, plaintiff occupied no different position than any other creditor; that as the legal title to the uncollected paper never passed to H. as assignee the avails of collections did not, in any legal sense, come to his hands by virtue of the assignment, but as the property of plaintiff; and the fact that they were paid out by him in good faith and without notice did not affect plaintiff's title; also, that, the order of the County Court was no protection to H.

Plaintiff heard of the assignment December 10, 1884; it served on H. notice of its claim on December twenty-sixth. It was claimed by H. that plaintiff was guilty of *laches;* and so that the payment of dividend made by him in ignorance of its claim was to be protected. *Held,* untenable; that if *laches* was a defense it was not established.

*Clark* v. *Merchants' Bk.* (2 N. Y. 380); *M. N. Bk.* v. *Loyd* (90 id. 530); *Briggs* v. *C. N. Bk.* (89 id. 182); *People* v. *City Bk.* (93 id. 582); *Ames* v. *Blunt* (5 Paige, 13); *Collumb* v. *Read* (24 N. Y. 505); *Averill* v. *Loucks* (6 Barb. 470, 477); *Iddings* v. *Bruen* (4 Sandf. Ch. 417); *Sullivan* v. *Miller* (106 N. Y. 635); *Barnard* v. *Campbell* (58 id. 73); *Goodwin* v. *Wertheimer* (99 id. 149); *Haggerty* v. *Palmer* (6 J. Ch. 437); *Herring* v. *N. Y., L. E. & W. R. R. Co.* (105 N. Y. 375) distinguished.

(Argued October 29, 1889; decided November 26, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 2, 1888, which affirmed a judgment in favor of defendant Hubbell, entered upon a decision of the court on trial at Special Term.

This action was brought originally against Alfred Wilkinson and J. Forman Wilkinson, composing the firm of Wilkinson & Co. and Charles E. Hubbell, as assignee of said firm, to recover moneys collected on certain checks, notes and drafts forwarded by plaintiff to said firm for collection.

The following are the material facts as found by the justice trying the cause:

The plaintiff is a duly constituted banking corporation, located and doing business in the city of New York. On and for many years prior to December 9, 1884, the defendants, J. Forman and Alfred Wilkinson, were copartners doing business under the firm name of Wilkinson & Co., as private bankers at the city of Syracuse, N. Y. For a number of years prior to December 9, 1884, the plaintiff had been accustomed to forward to the firm of Wilkinson & Co., for collection, checks, drafts and notes belonging to it and made payable at different places at the city of Syracuse and vicinity, the firm being the correspondents of the plaintiff in that portion of the state. The course of business pursued by the plaintiff and the firm of Wilkinson & Co. was as follows: The plaintiff upon receiving checks, drafts and notes payable at Syracuse or its vicinity made upon such paper an indorsement in the following form:

"Pay Wilkinson & Co., or order for coll. for account of National Butchers & Drovers' Bank of the city of New York.                           "W. H. CHASE,
                                                "*Cashier.*"

The plaintiff thereupon enclosed said checks, drafts and notes in a letter addressed to the firm of Wilkinson & Co., which was in the following form:

"NATIONAL BUTCHERS & DROVERS' BANK,
                                        "NEW YORK, 188

Messrs. WILKINSON & Co.:

"DEAR SIRS. — Your favor of the —— inst. is received with enclosures as stated. I enclose for collection and credit bills as stated below.
                   "Respectfully yours,
                        "WILLIAM H. CHASE,
                                "*Cashier.*"

Thereupon follows an itemized statement of checks, drafts, etc., naming the bank where payable, the city where such bank is located and the amount of the checks, drafts, etc. All above the itemized statement in the letter was in print except the address "Messrs. Wilkinson & Co." Thereupon the plaintiff, upon its books, charged to Wilkinson & Co., the various drafts, checks etc., thus forwarded to them, and upon the credit side of their account credited them for whatever moneys were remitted to and received by the plaintiff from Wilkinson & Co. The charges against Wilkinson & Co., were made upon the ledger of the plaintiff day by day, as the checks, drafts, etc., were sent, and on the days they were sent. Upon receipt, by Wilkinson & Co., of the checks, drafts, etc., such of them as were payable on demand were immediately upon their receipt credited to the account of the plaintiff kept upon the books of Wilkinson & Co., for their face value. Such paper as was not payable upon demand, but had some time to run, was not entered upon the account of the plaintiff until it was actually paid. Such of the checks, bills and notes as were payable at banks of the city of Syracuse were thereupon collected by Wilkinson & Co. through the clearing house. If any of the paper, however, was protested, it was charged back upon the books of Wilkinson & Co. to the plaintiff and returned to it and the expenses of protest charged to plaintiff. Such of the paper received by Wilkinson & Co. from the plaintiff as was payable at banks out of the city of Syracuse was forwarded by Wilkinson & Co. to their own correspondents at the cities and villages where such payments were to be made, and Wilkinson & Co. received from them the proceeds of such paper when collected. On Thursday of each week Wilkinson remitted to the plaintiff, by a draft on New York, the amount standing to the credit of the plaintiff upon their books up to that time, less about three-sixteenths of one per cent for their services. These remittances were generally made in the morning, regardless of whether Wilkinson & Co. had at the time actually received the proceeds of all the checks, drafts, etc., which then stood upon its book

credited to the plaintiff. This manner of doing business had been carried on for a number of years prior to the failure of Wilkinson & Co., and was understood by the plaintiff and was the existing arrangement. In pursuance of this arrangement, the plaintiff, on and for a number of days prior to December 8, 1884, forwarded to Wilkinson & Co. various drafts, checks and notes, indorsed by the plaintiff in the manner above described, inclosed in letters in the form specified, amounting in all to $14,260.36, all of which, except time collections, amounting to $438.67, were credited to the plaintiff upon their books. From this total Wilkinson & Co. prior to December 9, 1884, had sent various sums for collection to other agents, leaving a balance of $13,822.43 to be accounted for. Of this sum there had been paid to, and received by, Wilkinson & Co. on and prior to December 9, 1884, the sum of $9,195.50, which sum was received by Wilkinson & Co. in divers sums from December 4 to December 9, 1884, both dates inclusive, and no part of that sum has been paid to the plaintiff, but all of it was paid out by Wilkinson & Co. in due course of business before December 9, 1884. On the 9th of December, 1884, Wilkinson & Co. executed and delivered to the defendant, Charles E. Hubbell, a general assignment for the benefit of their creditors of their property, both real and personal, and Hubbell duly accepted the trust created, and duly qualified as such assignee, and took possession thereunder on the morning of December 10, 1884, said assignment being duly recorded on that day. Between the execution and delivery of the assignment and the 20th of February, 1885, Hubbell, as such assignee, received of the checks, drafts, etc., sent by plaintiff to Wilkinson & Co., the sum of $4,626.83, being the balance of said sum of $13,822.43. The defendant remitted to the plaintiff $438.67 of above amount, being proceeds of time paper sent for collection, as to which a different practice had prevailed, but defendant Hubbell, as such assignee, refused to pay the balance of said $4,626.83, being the sum of $4,188.16, to the plaintiff. Prior to a notice of the plaintiff's claim served on defend-

ant Hubbell, December 26, 1884, he had, as assignee of
Wilkinson & Co., received from the entire estate the sum
of $10,903.36, which sum included all but $295.48 of the
above-named, $4,188.16, and the assignee, prior to receiving
the notice, had paid out in the management of the estate, and
in a dividend to the preferred creditors in the assignment,
the sum of $10,548.57; leaving a balance of $354.79, the
dividend being the sum of $10,001.71.   The dividend paid by
the assignee to the preferred creditors of Wilkinson & Co.
was made by him in accordance with the provisions of the
assignment to him, and under an order of the county judge
of Onondaga county, dated December 23, 1884, which
directed and authorized him to make a dividend of ten per cent
upon the first preferred claims mentioned in the assignment.
All of the payments were made by the defendant, Charles
E. Hubbell, as assignee of Wilkinson & Co., in good faith and
without any notice or knowledge of any claims made by the
plaintiff, on any of the money received by him, and without
knowledge of any claim made by the plaintiff that the title to
any portion of the moneys, which were the proceeds of checks,
drafts, etc., sent by the plaintiff to Wilkinson & Co., was
claimed to be vested in it.   After the assignee had paid out
the money, and on the 26th day of December, 1884, the plaint-
iff for the first time made any claim or served any notice upon
the assignee of any claim to any of the moneys, drafts, checks
or securities received by Wilkinson & Co. from the plaintiff,
or the proceeds of any of such drafts, checks or securities
received by him.   The plaintiff had no notice of the applica-
tion for the order granted by the County Court, or judge of
Onondaga county, and was not apprised of the same until after
Hubbell had paid the dividend to the preferred creditors of
Wilkinson & Co. named in the assignment.

Before the commencement of this action due and proper
demand of payment on behalf of the plaintiff was made of
the firm of Wilkinson & Co., and of said Charles E. Hubbell,
as such assignee, and payment by them severally refused.

The assignment was subsequently set aside as a fraud upon the Wilkinsons' creditors.

The trial judge held that the defendant Hubbell was not liable for the moneys received and spent by Wilkinson & Co. prior to the assignment, nor for the money received by Hubbell himself after the assignment, and paid out by him in the payment of a dividend to the preferred creditors under the assignment, and that Wilkinson & Co. were themselves liable for the amounts collected by them as proceeds of the paper sent them for collection by the plaintiff.

After the trial of the action the defendant Alfred Wilkinson died, leaving the defendant J. Forman Wilkinson sole surviving partner of the firm of Wilkinson & Co.

*William Jones* for appellants. The special and restrictive indorsement made on all these collections by plaintiff before forwarding the same to Wilkinson & Co., shows the intent of the plaintiff to retain the title thereto, and the avails thereof as against all others, therefore these restrictive indorsements upon this paper must govern. (*Ex parte Pease*, 19 Ves. 15, 25; *Ex parte Thompson*, 1 Mont. & Mac. 112; *White* v. *Nat. Bank*, 102 U. S. 658; *Van Amee* v. *Bank of Troy*, 8 Barb. 312; *People* v. *City Bank of Rochester*, 96 N. Y. 37; 2 Burrows, 1228; *Jones* v. *Peppercorn*, 28 L. I. Ch. 158; *E. H. Bank* v. *Scoville*, 12 Conn. 314; *Fabius* v. *Merchants' Bank*, 28 Pick. 330; *M. Bank* v. *Hall*, 83 N. Y. 338, 345.) These collections being thus restrictively indorsed by the plaintiff for a specific purpose, such indorsement conferred no title to the same, nor to the proceeds thereof, upon Wilkinson & Co. or said Hubbell, but the same remained in the plaintiff. (*Snee* v. *Talcott*, 1 Atk. 249; *Archer* v. *Bank of Eng.*, 2 Doug. 637; *Edie* v. *East Co.*, 2 Burr. 1227; *Sigourney* v. *Lloyd*, 8 B. & C. 622; 5 Bing. 525; *White* v. *Nat. Bank*, 102 U. S. 658; *Montgomery Bank* v. *A. C. Bank*, 7 N. Y. 460; *Arnold* v. *Clark*, 1 Sandf. 491; *West* v. *A. E. Bank*, 44 Barb. 175; *McBride* v. *F. Bank*, 26 N. Y. 450; *Hoffman* v. *Miller*, 9 Bosw. 334; *People* v.

*Bank,* 39 Hun, 187; *Van Amee* v. *Bank of Troy,* 8 Barb. 312; *Dickerson* v. *Wason,* 47 N. Y. 439; *Scott* v. *O. Bank,* 23 id. 289; *McBride* v. *F. Bank,* 26 id. 450; *Com. Bank* v. *M. Bank,* 3 Keyes, 337.) As no title to said collections, or the proceeds thereof, passed to or vested in Wilkinson & Co., no title to the same passed or vested in said assignee by virtue of said assignment. (*In re Howe,* 1 Paige, 125; *Shirley* v. *S. R. Co.,* 3 Edw. Ch. 509, 513; *Addison* v. *Brackmyer,* 4 Sandf. Ch. 498; *Legar* v. *Bonniffee,* 2 Barb. 475–479; 2 Sugden on V. and P. 74, 75; *People* v.*Bank, etc.,* 39 Hun, 189; Bishop on Insolv. Debt. [2d ed.] 301, 302; *Van Heusen* v. *Redcliff,* 17 N. Y. 584; *Giles* v. *Perkins,* 9 East, 12; *Thompson* v. *Giles,* 3 R. & R. 742; *Carpenter* v. *Marndell,* 3 B. & P. 40; U. S. Bank'y Act of 1867; *Rhodes* v. *Blackstone,* 106 Mass. 334; *Beall* v. *Harrell,* 7 Bank Reg. 401; *In re Kimball,* 1 id. 60; *In re Hambright,* 2 id. 157; *Craig* v. *Hadley,* 99 N. Y. 131; The county judge was without jurisdiction to grant the order directing the assignee to pay out the avails of the collections. (Laws of 1877, chap. 466, § 20; Laws of 1878, chap. 318; Code Civ. Pro. §§ 2717, 2718, 2719; Redf. on Sur. [3d ed.] 561, 595; Laws of 1860, chap. 595; *In re Nelson,* 11 Abb. 352.) The assignee had notice that the moneys belonged to the plaintiff, at and before said payments. (*Angle* v. *N. W. M. L. Ins. Co.,* 92 U. S. 342; *Leneve* v. *Leneve,* 2 L. C. in Eq. 160; 1 Story on Eq. [10th ed.] § 400 b; *F., etc., Bk.* v. *Logan,* 74 N. Y. 568; *C. Bk.* v. *R. W., etc.,* 44 id. 136; Wade on Notices [2d ed.], §§ 8, 9, 10, 11, 88.) The assignee acted in such a negligent manner in the management of the assigned estate that he should be held liable to the plaintiff for the avails of its collections received by him after December 9, 1884. (*Litchfield* v. *White,* 7 N. Y. 438; Burrill on Assignments, 556; Bishop on Assignments [2d ed.] 308, § 282; *Anou* v. *Gelpcke,* 5 Hun, 245; 1 Abb. N. C. 406.) If the assignee is to be treated in the light of a bailee, then he is liable to the plaintiff for the whole avails of its collection received by him subsequent to December 9, 1884. (*Price* v.

*O. S. R. R. Co.*, 51 N. Y. 213; Edwards on Bail, § 327; *Litchfield* v. *White*, 7 N. Y. 438; *Palmer* v. *Holland*, 51 id. 416; 3 Seld. 459; 1 Kern. 203; 22 Wend. 215.) There is no equitable distinction between Hubbell acting in an individual capacity or as trustee under an assignment, in paying out this money. (*Van Heusen* v. *Redcliff*, 17 N. Y. 584; *Giles* v. *Perkins*, 9 East, 12; *Thompson* v. *Giles*, 3 R. & R. 742; *Carpenter* v. *Marndell*, 3 Bos. & P. 40; *Rhodes* v. *Blackstone*, 106 Mass. 334.)

*Louis Marshall* for respondents. The title to the proceeds of the paper became transferred from the plaintiff to Wilkinson & Co. (*Clark* v. *M. Bk.*, 2 N. Y. 380; *Briggs* v. *C. Nat. Bk.*, 89 id. 182; *M. Nat. Bk.* v. *Lloyd*, 90 id. 530; *People* v. *R. C. Bk.*, 93 id. 582; *C. I. Works* v. *A. E. N. Bk.*, 34 Hun, 26; *A. C. Bk.* v. *Hughes*, 17 Wend. 94; *A. Nat. Bk.* v. *F. Nat. Bk.*, 46 N. Y. 82; *People* v. *M. and M. Bk.*, 78 id. 269; *Chapman* v. *White*, 6 id. 412.) Assuming that no title was conferred upon Wilkinson & Co. to the checks, drafts, etc., remitted to it by the plaintiff, the latter is entitled to no relief against their assignee or receivers for the moneys which Wilkinson & Co. collected prior to their assignment, the proceeds of such checks and drafts having been paid out prior to that time. (*Caven* v. *Gleason*, 105 N. Y. 256; *Farris* v. *Van Vechten*, 73 id. 113; *Hart* v. *Bulkley*, 2 Edw. Ch. 71; *Dows* v. *Kidder*, 84 N. Y. 131; *Butler* v. *Sprague*, 66 id. 355; *People* v. *Merchants' Bk.*, 78 id. 269; *Cook* v. *Tullis*, 18 Wall. 332; *Higgins* v. *Higgins*, 14 Abb. N. C. 24.) Again, assuming that no title to the checks, drafts, etc., in question passed to Wilkinson & Co., the plaintiff is entitled to no relief against their assignee or receivers with respect to the proceeds of such paper as was received by the assignee, he having expended them in good faith and without notice of any pretended equities of the plaintiff prior to the making of any demand or the service of any notice by the plaintiff upon him. (*Goodwin* v. *Wertheimer*, 99 N. Y. 149; *Southwick* v. *F. N. Bk.*, 84 id. 420; *Jessup* v. *Miller*, 2 Abb. Ct.

App. Dec. 449; *Hall* v. *Robinson,* 2 N. Y. 293; *Bliss* v. *Cottle,* 32 Barb. 322; *Stevens* v. *Hyde,* Id. 171; *Schofield* v. *Whitelegge,* 49 N. Y. 259; *Wakeman* v. *Grover,* 4 Paige, 23; 11 Wend. 187; *Ames* v. *Blount,* 5 Paige, 13; *Barney* v. *Griffin,* 4 Sandf. Ch. 552; *Haverill* v. *Loucks,* 6 Barb. 470; *In re Mitchell* v. *Tennant,* Gen. Term, fourth dept., July, 1886; *Collumb* v. *Reed,* 24 N. Y. 505; *Sullivan* v. *Miller,* 106 id. 635; *Herring* v. *N. Y., L. E. & W. R. R. Co.,* 105 id. 375; *Young* v. *Brush,* 28 id. 671; *In re Lewis,* 81 id. 421.)

PECKHAM, J.    The defendant Hubbell, as one defense to the claim of the plaintiff, insists that Wilkinson & Co., upon the receipt, by them, of the various checks and drafts or other pieces of paper payable on demand, and upon the crediting of the amounts thereof to the plaintiff upon their books, without waiting for the payment of the same, became the owners thereof, and that these facts amounted to a transfer of the title to the paper, or its proceeds, to Wilkinson & Co. In that, we think, he is mistaken.    The indorsement upon each piece of paper was for collection simply, and by virtue of that indorsement no title passed to the firm, but, on the contrary, it became simply the agent of the plaintiff to present the paper, demand payment thereof and remit to it.    Under such circumstances the title to the paper remained in the party sending it.    (*Montgomery Co. Bk.* v. *Albany City Bk.,* 7 N. Y. 459; *Dickerson* v. *Wason,* 47 id. 439; *White* v. *Nat. Bk.,* 102 U. S. 658.)

The letter accompanying the inclosures of paper amounted simply to a direction to credit after the collection was made; and up to the time that the funds were actually received by the firm, it certainly would make no alteration in the law relative to indorsement for collection only.

Nor does the finding of the learned justice at Special Term as to the custom pursued between the parties alter the law in regard to the title to the paper before the funds arising from the payment thereof were actually received by the firm.    The

finding shows that the credit was a provisional one only. It was a mere matter of bookkeeping. It would seem to have been more in the form of a memorandum of the different pieces of paper received ; because if any were not paid, such as went to protest were at once charged back upon the books of the firm against the plaintiff, and returned to it with the expenses of protest charged to it. The firm never became absolutely responsible to the plaintiff for the amount of these collections until the collections were actually made and the proceeds received by them.

The property in these different pieces of paper, therefore, never vested in the firm, and the firm never purchased them or advanced any money upon them. Hence the firm never owned them. (*Scott* v. *Ocean Bk.*, 23 N. Y. 289 ; *Dickerson* v. *Wason*, *supra*.)

These pieces of paper were undoubtedly subject to the direction of the plaintiff at any time prior to their payment, and it would have been the duty of the firm to have obeyed such direction. The plaintiff could have withdrawn the paper or made such other disposition of it as seemed to it proper. It might have been liable to pay the firm for the services performed by them, but that had no effect or bearing upon the title to the paper.

The cases relied on by the counsel for the defendant for the purpose of showing title in the firm were decided upon an essentially different state of facts. In *Clark* v. *Merchants' Bank* (2 N. Y. 380) the indorsement was in blank, which the court said, *prima facie*, imported a transfer of the title to the note, and that it was not sent for collection merely. Upon looking at the other facts in the case the court held there was nothing to show that the paper was sent for collection only, but, on the contrary, it appeared plainly that it was intended to pass the title. GARDNER, J., in that case, said : " The whole fund was, by the course of dealing, and, in this instance, by the directions of the plaintiff, treated as cash. It was passed to their credit according to their instructions, and the draft in question was for account." Again, he said : " The

whole arrangement was one of mutual convenience, and to hold that such drafts were transmitted for collection merely, with no right to a credit, or to draw against them until they were actually paid, is to lose sight of the situation of these brokers, their business and their necessities."

In *Metropolitan National Bank* v. *Loyd* (90 N. Y. 530) the bank received the check from the depositor as a deposit of money and entered the amount as cash to the credit of the depositor in his bank pass-book, which was returned to him. It was held that the title to the check passed to the bank. It was not received merely for collection. The court, per DANFORTH, J., said: "It is not disputed that Murray (the depositor) held the check as owner. It was his property to do with as he pleased. He had held other checks. Some of these he placed in the Troy bank for collection. Others he deposited and took credit therefor as cash upon his pass-book. As to the first, he could give and revoke his own directions as often as he chose, but as to the others, when they were by his direction credited to him, the title passed to the bank and they were not again subject to his control." There again the credit was of so much cash. It was nothing less than the purchase of the check. The indorsement was in blank and the bank took it as owner.

In *Briggs* v. *The Central National Bank of New York* (89 N. Y. 182) the defendant made the First National Bank of Newark its collecting agent. The bank upon which the check was drawn, upon its receipt, charged the check to the drawer and credited the defendant with the amount in its account. By the transaction the check was paid to the Newark bank, and it was only necessary for it to remit its collections once a week to the bank in New York under its agreement. The next day, however, it suspended payment, and in an action by the person who gave the check to the defendant for collection it was held that the defendant was liable for the payment thereof, although it had not received the amount from its own agent in Newark. The case is not in the least similar to the one at bar.

In *People* v. *City Bank of Rochester* (93 N. Y. 582) that bank and the Utica City National Bank each acted as agent for and kept a running account with the other, the balance being struck once a week and the bank found indebted remitting the balance due. The crediting of the paper was entirely different, and there was a mutual account current between the banks. All that case holds, however, is that when the moneys were paid the relation between the banks was simply that of debtor and creditor.

We cannot see, therefore, that, as to the paper not actually collected and the cash received by Wilkinson & Co. before their failure, it ever became the property of that firm, or that the title to the proceeds thereof ever vested in that firm or its assignee.

As to the moneys received by the firm in payment of checks and drafts sent to it for collection by the plaintiff and by the firm, paid out before the assignment and in the usual course of business in payment of the debts of the firm, and, of course, never received by the assignee, we do not see that the plaintiff occupies any different position in that regard towards the firm than any other creditor. As the firm was to remit but once a week, of course it was not expected that the identical moneys received by it, in payment of paper sent to it for collection, were to be sent to the plaintiff. The firm, by the arrangement, had the right to retain the moneys and to remit weekly, and, of course, from one week to another it had the right to use the money, and the plaintiff relied upon the credit of the firm for such time as it had the right to retain the money.

But it is claimed, on the part of the defendant, assignee, that, assuming that no title to the checks passed to Wilkinson & Co., the plaintiff is not entitled to recover, so far as regards the proceeds of the paper that were received by the assignee, and expended by him in good faith and without notice by him of any claim on the part of the plaintiff prior to the making of the demand or the service of the notice by the plaintiff upon him. We think this claim cannot be maintained.

In the first place the money received by the assignee, as

proceeds of the paper sent by the plaintiff to the firm for collection, and not collected by the firm before the assignment, never became the property of that firm, and, therefore, the legal title never passed to the assignee of the firm. It was not transferred by the firm to the assignee because, at the time when the assignment was made, the money had not been collected and had not come into the hands of the assignors. It never came into the hands of the assignee by virtue of the assignment in any legal sense of the term. The moneys came to him from the various collecting agents to whom the drafts and checks had been sent by the firm. The assignee could get no better title to the moneys than his assignor, and neither had any right to apply such moneys collected, after the failure, to the payment of firm debts. If it be said that he received and applied them in good faith, it may be answered that good faith did not change the title of the plaintiff to the proceeds of its property.

There are cases in which an assignee or trustee is protected for acts done in good faith under an instrument creating the trust, and before such instrument has been declared invalid. Where an assignee under an assignment for the benefit of creditors, fraudulent upon its face, pays money to *bona fide* creditors of the assignor in accordance with the directions of the assignment, he will be protected, provided he does it in good faith and before any other creditor has obtained a lien upon the money. This is because the assignment, as between the parties to it, is valid and the assignee in making such payment is doing no more than the assignor might at that time lawfully have done if no assignment had been made. In such case all that can be said is, if the assignment be declared void, that the assignor paid certain of his creditors indirectly and through the agency of the assignee at a time when he had the right to do it directly but for the assignment. Such was the case of *Ames* v. *Blunt* (5 Paige, 13), where the chancellor said that the liability of the assignee depended upon the question whether the rights of the plaintiff had been affected by the distribution of the proceeds of the assigned property to *bona*

*fide* creditors of the assignor. And it was held that the plaintiff was not thereby injured because the assignee had done no more than the assignor might have done at any time before the plaintiff obtained a lien upon the money paid by the assignee. To the same effect are the cases of *Collumb* v. *Read* (24 N. Y. 505); *Averill* v. *Loucks* (6 Barb. 470, 477); *Iddings* v. *Bruen* (4 Sandf. Ch. 417).

The case of *Sullivan* v. *Miller* (106 N. Y. 635) is also an instance of the same general principle. In that case the property belonged to the assignor and was assigned to the assignee subject to a mortgage. The action of the assignee (or his successor, the receiver) was upheld by the court. The title to the property was in the assignor. It was not property of a third person which he disposed of.

It is argued, also, that as this property came honestly into the possession of the assignee, the plaintiff would have to prove a demand upon, and a refusal by him to give it up, before an action could be maintained; and it is then claimed that where such an assignee, before notice has been given to him, or any demand made upon him for a surrender of the property, has disposed of the same in good faith, he is relieved from liability. The cases cited by counsel are those where property has come into the hands of the assignor tortiously, and, under such circumstances, that, as between him and the original owner, the latter could insist upon his title. In such case, where possession of the property is given to the assignee under the assignment, it is held that as he innocently came into the possession of the same, before an action can be maintained against him, demand must be made for the surrender of the property. Such is the case of property obtained by the assignor by fraudulent representations, where the vendor has the right to rescind the contract and take back the property. (*Barnard* v. *Campbell*, 58 N. Y. 73; *Goodwin* v. *Wertheimer*, 99 id. 149.) But in such case the legal title is in the assignor at the time he makes the assignment, and that title passing to the assignee, who is innocent of the fraud, a demand by the vendor must be made before an action for its recovery can be maintained.

The case of *Haggerty* v. *Palmer* (6 Johns. Ch. 437) is of a similar nature. The legal title to the property was in the assignor, and the assignee took it. If disposed of by him to a *bona fide* purchaser for value, without notice, the vendee might be protected, and the assignee also if he sold before he himself had any notice. Here the property was never the property of the assignor. It never came to the assignee by virtue of the assignment in any legal acceptation of that term. Indeed, he must have known that the property did not belong to the assignors. At least an inspection of their books would have shown, as it seems to us, enough to put him upon inquiry as to where the title to these moneys vested. It did not vest with the assignors, and they could transfer none to their assignee.

Again, we do not think that the order of the County Court or the county judge for the payment of the dividend was the least protection to the assignee. That order did not assume to say what moneys should be used in the payment of the dividend. It did not assume to decide whether these moneys were the moneys of the assignor. That question was not before the court. It simply gave directions to the assignee to pay a certain dividend upon papers which, it is to be presumed, showed to the court or judge that the assignee claimed to have moneys enough of the assignor in his hands at the time to pay it with.

But even if it had assumed to direct that these particular moneys should be paid, we see no protection thereby given to the assignee. The plaintiffs could not be concluded upon a question as to the title to their property by any *ex parte* decision of the county judge. The case of *Herring* v. *New York, Lake Erie & Western Railroad Company* (105 N. Y. 375) has nothing to do with the point. The plaintiff here was no lienor of property in the possession of the assignee. It was, as we have seen, the absolute owner of it, and it could not be divested of its title without some notice.

Lastly, the claim is made that the plaintiff has been guilty of laches in asserting its rights, and that, therefore, the pay

ment made by the assignee in ignorance of the existence of its claim is to be protected.

If laches were a defense we see no facts upon which their existence can be founded. The plaintiff heard of the assignment of Wilkinson & Co. at the earliest, not before December 10, 1884, and on the twenty-sixth the demand on its behalf for these moneys was made of the assignee. It seems that, under an *ex parte* order of the County Court or judge made on the 23d of December, he had already paid out a large part of this money. It would be a pretty stern application of the doctrine of laches to hold that a plaintiff should be deprived of all title to its property by reason of not making a demand for it of an assignee of a third person for the benefit of creditors within less than sixteen days after it heard of the assignment, and where it had no reason to suppose that the assignee would take its property to pay the debts of the assignors. The defense of laches is not made out.

Whether the funds (if there are any) in the hands of the assignee, collected by him since the service of the notice and the demand, should be impressed with a trust to reimburse the plaintiff the amount of its property used to pay the debts of the assignors, we do not now decide. We should want more facts before us. We should, among other things, want to know whether any liens had been acquired by any other creditor upon such moneys, and under what circumstances, so as to be able to decide understandingly as between different claimants to such funds. Perhaps other parties would have to be brought in.

Upon the whole, we think the assignee is liable to account to the plaintiff for the moneys received by him subsequent to the 9th day of December 1884, being the proceeds of the checks or drafts above referred to.

It results from these views that the judgment of the General and Special Terms should be reversed, as to the assignee, and a new trial granted against him, with costs to abide the event.

All concur, except RUGER, Ch. J., and ANDREWS, J., not voting.

Judgment accordingly.