FIRST NAT. BANK OF RICHMOND v. WILMINGTON & W. R. CO.

(Circuit Court of Appeals, Fourth Circuit.    November 25, 1896.)

No. 170.

BANKS AND BANKING—COLLECTIONS.

When a bank indorses commercial paper "for collection," and forwards the same to another bank for collection and remittance, the collecting bank, though it acts only as agent for the remitting bank, and has no mutual account with it, is not required to keep the moneys collected separate from all other moneys in its possession, and to remit the identical money, nor is the payer of such paper required to see that the identical money is remitted.

In Error to the Circuit Court of the United States for the Eastern District of North Carolina.

Thomas W. Strange, for plaintiff in error.

Junius Davis and George Rountree, for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge.    On June 13, 1893, the treasurer of the Wilmington & Weldon Railroad Company of North Carolina drew two drafts upon his company for the aggregate sum of $4,766.26 in favor of the Tredegar Iron Works of Richmond, Va.    The drafts were passed, for value, to the First National Bank of Richmond, which became the owner of them.    The Richmond Bank indorsed the drafts "for collection," and, in due course of mail, sent them to the Bank of New Hanover, of Wilmington, N. C., "for collection and remittance."    The New Hanover Bank, on the 15th of June, presented the drafts to the Wilmington & Weldon Railroad Company at its office in Wilmington for payment; and received for the drafts, from the railroad company, two checks, one of them upon itself for $3,952, and the other upon the Atlantic National Bank of Wilmington for $2,000.    When the checks were received by the New Hanover Bank, that bank charged the check drawn upon itself to the account of the railroad company on its books, and entered a memorandum of the charge upon its "remittance blotter."    The check upon the Atlantic National Bank was not presented during banking hours of the 15th, but in the afternoon was, together with other checks of the Atlantic National Bank, which the New Hanover Bank held, transmitted to that bank by a runner of the New Hanover Bank, and an account was stated between the checks held by the New Hanover Bank against the Atlantic National Bank and the checks held by the Atlantic National Bank against the New Hanover Bank, and the difference of $2,051.36 in favor of the New Hanover Bank was paid in money by the Atlantic National Bank to the New Hanover Bank.    The New Hanover Bank did not send the First National Bank of Richmond any money, or make other remittance in payment of the money col-

77 F.—26

lected from the railroad company, at any time. At the beginning of business on the 15th of June the railroad company had to its credit on the books of the New Hanover Bank the sum of $2,772.07. Subsequently, on the same day, its treasurer made a deposit of $3,871.15, and drew a check for $3,952.72, so that the railroad company had to its credit in the New Hanover Bank at the close of business on that day the sum of $2,690.50. The total amount of money in the New Hanover Bank during banking hours on the 15th was $49,169.07, and the total of checks upon it presented during the same day, either to be cashed or credited to depositors, was $62,000. If payment had been asked for all the checks presented on that day there would not have been money enough to meet them; but the cashier testified that, had money been demanded for the check drawn by the railroad company, it would have been paid by the bank. The New Hanover Bank had been doing business for the First National Bank of Richmond for several years, but only as a collecting agent, no mutual accounts having been kept between them; nor did the New Hanover Bank hold any other business relationship with the Richmond Bank at any time than that of a collecting agent. The New Hanover Bank made an assignment of all its effects on Monday the 19th of June, four days after the transactions described. It actually closed its doors on Saturday, the 17th. The record does not show that the failure of the New Hanover Bank was contemplated by the public, or that it was apprehended by the railroad company, or by the First National Bank of Richmond. In its complaint or declaration below the plaintiff demanded judgment for the two drafts sent to the New Hanover Bank for collection, or for the sum of $5,952.72, for which they were drawn, with interest from the 15th of June, 1893, and for costs. The case was given to a jury, who, upon the evidence submitted to them by plaintiff and defendant, respectively, found for the defendant. Judgment followed, and the case was brought to this court by writ of error.

The two principal questions presented by the record are whether the New Hanover Bank was the mere agent of the Richmond Bank for collecting the amount of the two drafts from the railroad company, and, as mere agent, was bound to remit that very money to the Richmond Bank; and, second, whether the railroad company was bound by the words "for collection," placed on the drafts, to see that the very money which it paid to the New Hanover Bank was transmitted specifically to the Richmond Bank. The court below, in its instructions to the jury, and in its judgment upon the verdict of the jury, held in the negative on both of these questions; and gave judgment against the plaintiff below.

In Armstrong v. Bank, 148 U. S. 50, 13 Sup. Ct. 533, the agreement was that the bank should collect for the plaintiff and remit every 10 days; and the United States supreme court held that, as soon as the paper was collected, the bank became a debtor to the plaintiff for the amount collected. This was equivalent to holding that on collecting the proceeds of drafts the bank ceased to be an agent bound to remit the very money collected; but became a debtor for

the sum collected. The custom of banks does not require a collecting bank to keep money collected separate from all others in its possession, and to remit that very money to the bank for which it made the collection; and the courts will take judicial cognizance of this fact. If this were not so, and if the payer and drawee of a draft were bound to look to the transmission of the very money paid upon it, an important branch of the business of banks would be discontinued, and the sending of money by express would become necessary in all cases of collection, to the great inconvenience of bankers. In the case under consideration, the Richmond Bank intrusted the collection of the two drafts to the New Hanover Bank, believing in its solvency; and the railroad company at Wilmington paid the drafts to the collecting bank confident of its solvency. The Richmond Bank selected its own agent of collection; and the railroad company paid this agent without demur, and in ignorance of any cause for demur. It had no discretion in the matter, and there was no room for the exercise of discretion on its part. The option to choose its collecting agent was with the Richmond Bank alone; and the railroad company, in the absence of any suspicion of that agent's insolvency, paid the drafts in compliance with its duty to do so. We are of opinion that the judgment of the court below should be affirmed, and it will be so ordered.