## THE UNION NATIONAL BANK *v.* THE CITIZENS BANK ET AL.

[No. 18,912. Filed June 13, 1899.]

BANKS AND BANKING.—*Collections.*—*Insolvency of Bank Making Collections.*—*Trusts.*—Plaintiff bank sent a note to defendant bank for collection. Defendant collected the note, receiving in payment the maker's check, charged the amount of the check to its deposit account, and drew a sight-draft on a correspondent bank, in which

it had a deposit in excess of the amount of the draft, and sent the draft to plaintiff as a remittance of the proceeds of the note collected. Plaintiff received the draft and forwarded it for payment, but the paying bank refused payment for the reason that it had received notice of the failure and suspension of defendant bank. *Held,* that the relation of trustee and *cestui que trust* was not created between the banks, but simply that of debtor and creditor, and that plaintiff is not entitled to be preferred in its claim over the general creditors of the insolvent bank.

From the Randolph Circuit Court. *Affirmed.*

*S. R. Bell* and *James B. Ross,* for appellant.

*J. W. Thompson,* for appellees.

JORDAN, C. J.—This cause was submitted to the lower court as an "agreed case" upon a statement of facts, as provided by §562 Burns 1894, §553 R. S. 1881 and Horner 1897. The following are substantially the material facts in the case: Appellant is a national bank organized under the laws of the United States and, as such institution, it is engaged at Kewanee, Illinois, in conducting a general banking business. The Citizens Bank of Union City, appellee herein, prior to being placed in the hands of a receiver, was a state bank organized under the laws of this State as a bank of discount and deposit, and on May 5, 1896, and prior thereto, was engaged in doing a general banking business at Union City, Indiana. This bank on April 20, 1896, and continuously thereafter until its suspension, was insolvent. On May 7, 1896, by reason of its insolvency, it closed its doors and suspended business, and its doors were not again opened for business after that date. On the morning of May 9, 1896, the State Bank Examiner, under the laws of the State, took possession thereof and the bank remained in his possession until the 16th of that month, when it was placed in the hands of appellee Canaday, the receiver, appointed as such by the proper court. On May 1, 1896, appellant bank was the *bona fide* holder of a certain promissory note for over $1,000 in amount, executed by the Knapp Supply Company, a cor-

poration located and doing business at Union City, Indiana. This note was payable at the Citizens Bank. Appellant, on May 1, 1896, indorsed this note for collection and sent it to the Citizens Bank with instructions to collect and remit. The note was received by the latter bank on May 2, 1896, and was duly entered by the bank on its register for collection. The note was presented, on the same day it was received, for payment to the maker thereof, the Supply Company. This latter company was on that day, and for a long time prior thereto had been, a depositor of the Citizens Bank, having therein on deposit at the time the note was presented to it for payment funds far in excess of the amount of the note. The Supply Company, at the time the note was presented to it for payment, drew its check upon the Citizens Bank for $1,157.83, the amount due upon the note, which check was accepted by the Citizens Bank as a payment in full of the note. The bank thereupon canceled the paper as paid and delivered it to said company and charged the amount of the check to said company's deposit account, the same being more than sufficient to pay and satisfy the check. The amount so collected by the Citizens Bank, in payment of appellant's claim, was entered on its collection register as a credit on said collection, and on May 4th, the next business day after the payment of the note (the 3rd being Sunday) the Citizens Bank drew its sight-draft in favor of appellant for the full amount of the collection (less charges) on the Merchants National Bank of Cincinnati, Ohio. This latter bank was the regular correspondent of the Citizens Bank, and, when this sight-draft was drawn, the Citizens Bank had as a depositor in the Merchants National Bank an account in its favor in excess of the amount of said draft. On May 5th, this draft was mailed by the Citizens Bank to appellant as a remittance of the proceeds of the note collected in the manner stated, and, without notice or knowledge of the insolvency of the Citizens Bank upon the part of appellant, the draft was received by it, and on the following day, through its regular

correspondent bank in the city of Chicago, Illinois, was forwarded to the Merchants National Bank for payment. On May 9, 1896, the draft was presented to the Merchants National Bank for payment, but payment thereof was refused and the draft protested for the reason that the Merchants National Bank had previously received notice of the failure and suspension of the Citizens Bank. At the time the latter bank passed under the control of a receiver, it had on hand in its vaults as the entire amount of money in actual cash $159, which consisted in the main of small coins and change, and did not include any of the credits or money on deposit in the Merchants National Bank belonging to it. At the time the Citizens Bank suspended and closed its doors, and on the day the sight-draft was presented for payment at the Merchants National Bank, its deposits in the latter bank amounted to $2,260.44; and this amount of money has been paid over to the receiver and is now in his hands. The agreed statement of facts also shows that on May 2, 1896, the day on which the note in question was received for collection, the Citizens Bank had, as cash on hand, the sum of $7,206; and on the morning of May 4th, it had $6,953; and on the morning of the 5th, $6,194; and on the 6th, $5,114. On May 2nd, the Citizens Bank, in the usual course of business, bought, paid for, and cashed checks, drafts, and bills of exchange on other persons and banks to the total amount of $125.85; and on the same day sent these checks, drafts, and bills to the Merchants National Bank and obtained credit for the same as a deposit. On May 4th, in its usual course of business, it also bought, paid for, and cashed checks, drafts, and bills of exchange amounting in all to $2,954.56, and on the same day these were forwarded to said correspondent and credit therefor received. On May 5th, it bought, paid for, and cashed drafts, and bills of exchange to the amount of $368.93, and these were sent on the same day to the Merchants National Bank and credit obtained therefor.

According to the showing of the daily entries made in the books and records of the Citizens Bank, it had on hand May 2, 1896, at the close of the day's business, in its safe, as cash, $13,589.93, and a total cash item of $24,590.01. On the 4th of May, accepting the authority of its books, it had on hand as cash $10,926, and a total cash item of $23,110.93; and on the 5th of May, $10,001.11, and a total cash item of $21,815.08; and on May 6th, $3,099.46, and a total cash item of $3,189.36. Of this latter amount, the receiver has received in cash, and now has in his hands, the sum of $2,504.12.

The facts show that it was the custom of the Citizens Bank, when making collections for persons or customers residing west of Union City, to remit the amount collected, less collection charges, by means of drafts drawn on the Merchants National Bank and that it did not remit the amount so collected in money, and that all of the business connected with the collection of the note in question, by the Citizens Bank, was conducted by it in the usual and ordinary way of making collections by banks; but appellant had no notice or knowledge of the insolvency or failure of the Citizens Bank, prior to the protest of the draft sent to it as a remittance of the proceeds of said note. The books of the bank, it is stated, do not show or represent, on the days mentioned, the true and actual amount of cash on hand, but simply show items that were carried on said books and treated as cash, but, in fact, were not actual cash on hand; and the amount stated above, as shown by the bank's books to be cash, included amounts which the bank had on deposit with correspondent banks, including also the amount on deposit with the Merchants National Bank.

The questions submitted to the lower court, under these facts, were: First, are the funds of the bank, in the hands of the receiver, impressed with a trust in favor of appellant to the amount of its claim? Second, is it entitled to a preferential right over the general creditors of the insolvent bank?

The lower court, under the facts, held that appellant was entitled to recover the full amount of its claim as a contract creditor, but denied its right to enforce a trust or to be preferred in its claim over those of other creditors, and rendered judgment accordingly. The question presented for our decision is: Did the court err in its conclusions of law upon the facts stated?

The principal contentions of appellant's learned counsel are: First, that, under the facts, the Citizens Bank is shown to have served, in collecting the note in question, as the agent of appellant, and, by mingling the proceeds of the claim with its own funds, the latter became impressed with such a trust as will entitle appellant to pursue the proceeds and reclaim them in the hands of the receiver, as its own separate property. Second, that the Citizens Bank, by accepting the note for collection, and collecting it, and mingling the proceeds thereof with its own, at a time when it is shown to have been insolvent, was, under the circumstances, guilty of fraud, and for that reason cannot be held to have acquired any title to either the note or the money arising out of its collection. In regard to the second contention it may be said that the rule is generally asserted and enforced, that, where a party has been induced to part with his property through the fraud of another, under the color or guise of a contract, he has the right upon discovering the fraud, to rescind and reclaim his property, unless it has passed into the hands of a *bona fide* holder. The general rule also sustained by the authorities is, that a bank entrusted with the collection of a claim, cannot hold the proceeds thereof against the owner, if, at the time of receiving the claim for collection, the bank was insolvent and its officers or agents were aware of or had notice of its insolvency. *St. Louis, etc., R. Co.* v. *Johnston,* 133 U. S. 566, 10 Sup. Ct. 390; *Bruner* v. *Bank,* 97 Tenn. 540, 37 S. W. 286, 34 L. R. A. 532; *Friberg* v. *Cox,* 97 Tenn. 550, 37 S. W. 283; Randolph on Commercial Paper (2nd ed.) §726.

The rule is also well settled that after a bank which holds paper for collection has suspended, and ceased to be a going concern, the general power which it had before its suspension to collect the paper and mingle the proceeds thereof with its own funds, and thereby create the relation of debtor and creditor between it and the person whom it served as collector, terminates, and the proceeds of any collection made under such circumstances, must be held by the collecting bank as a trustee of the owner. Boone's Law of Banking, §210. But this latter rule, under the facts, can have no application in this action.

The agreed statement of facts, which takes the place of all pleadings in this case, does not, however, proceed upon the theory that a fraud was perpetrated upon appellant by the Citizens Bank, in collecting the note in question. Therefore, fraud, under the agreed statement, which performs the office of a complaint in this cause, cannot be considered as the gravamen of the action. Appellant has the burden in this case, and it is required clearly and fully to show such facts as will entitle it to the relief in question; otherwise it will fail. The rule applicable to a special verdict or finding obtains, and nothing under the agreed statement can be taken by intendment. Elliott's App. Proc. §226.

The facts show that, at the time the Citizens Bank received and collected the money and drew the draft in favor of appellant for the proceeds thereof, it was still a going concern and so continued until its suspension on the day mentioned. At the time it made the draft and at the time the latter was presented for payment, it had ample means in the Merchants National Bank to meet the draft, and it fully appears, under the agreed statement, that all of the business relating to the collection of the note was conducted in the manner usually and ordinarily employed by banks in collecting claims. As to whether the officers of the bank were aware of or had knowledge of its insolvent condition, prior to the day of its suspension, is a matter which is left wholly to in-

ference.   We are not permitted to infer or presume the existence of facts essential to the establishment of fraud. There is such an absence of facts essential to the recovery upon the grounds of fraud, that this feature of the case may be dismissed from further consideration.

We may recur to and consider the question, did the Citizens Bank, in collecting the note, become a trustee of appellant so as to impress the proceeds, when collected, with a trust which may be enforced against the money or property in the hands of the receiver, or is appellant, under the circumstances, simply a contract creditor, entitled to share in the assets of the insolvent bank in like manner as other creditors? It must be conceded that if, by the transaction of the business in respect to the collection of the note, the relation of creditor and debtor was created between appellant and appellee bank, then the former cannot maintain preferential rights over other creditors, whatever may have been the origin of its claim.   Receivers and assignees, of course, take property, which comes into their hands for administration, subject to all legal and equitable claims; and if appellant, under the facts, can sustain the application of the trust doctrine, for which it contends, its right to enforce the same against the receiver in this action cannot be controverted.   *Lamb* v. *Morris,* 118 Ind. 179, 4 L. R. A. 111, and cases there cited.

The right of a *cestui que trust* to pursue and reclaim trust funds, when the same can be identified and the rights of *bona fide* holders have not intervened, must be conceded.   It matters not, so far as the enforcement of this equitable doctrine is concerned, whether the funds impressed with the trust have been traced into the hands of an individual or into the possession of a bank.   *Pearce* v. *Dill,* 149 Ind. 136; *Importers, etc., Bank* v. *Peters,* 123 N. Y. 272, 25 N. E. 319.

The rule which prevails and is generally recognized in regard to bank deposits is, that, where a deposit is made in a bank in the ordinary course of business, either of money or of drafts or checks received and credited as money, the title to

the money or to the drafts and checks deposited, in the absence of any special agreement or direction, passes to the bank, and the relation of debtor and creditor arises between the depositor and the bank, without any element of a trust entering into the case. The bank, in such cases, acquires title to the money, checks or drafts deposited, upon the implied agreement upon its part to pay full consideration for the same when called upon by the depositor in the usual course of business. *Wasson* v. *Lamb*, 120 Ind. 514, 6 L. R. A. 191; *Bedford Bank* v. *Acoam*, 125 Ind. 584, 9 L. R. A. 560; *Lamb* v. *Morris, supra; Harrison* v. *Wright*, 100 Ind. 515, 50 Am. Rep. 805; *McLain* v. *Wallace*, 103 Ind. 562; *Cragie* v. *Hadley*, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9.

Reducing the facts in the case at bar to a minimum, they disclose that appellant and appellee banks were each engaged in doing a general banking business, the former in Illinois and the latter in Indiana. The note was indorsed and sent for collection by the former to the latter with the general direction to collect and remit. The latter, it appears, at the time it received the paper and collected it was insolvent, but was still a going concern engaged in its usual business of banking. The fact as to whether its officers or agents had notice at the time the collection was made, that the institution was insolvent and would be compelled in the near future to suspend business on account of its insolvency, is not expressly disclosed by the agreed statement. The note, it seems, was paid by means of a check drawn by its payee upon the collecting bank, of which such payee was a depositor, and the proceeds were remitted to appellant by means of a sight-draft drawn by appellee upon a corresponding bank. All of the acts of the collecting bank in making the collection, it appears, were compatible with the usual and ordinary methods employed by banks in the collections of similar claims. The remittance by draft, on the bank in question, is shown to have been in accord with the usual custom of the Citizens Bank in remitting money collected by

it for customers residing west of Union City. The draft, which represented the amount arising out of the collection of the note, it seems, was received and forwarded by appellant for payment, and the only thing which intervened to prevent the payment thereof was the subsequent failure and suspension of the collecting bank.

Certainly it cannot be asserted that these facts are sufficient to establish a case for the intervention of equity in the enforcement of the trust. The entire business of collecting and remitting the amount of the note was transacted by means of the check and draft, no money being actually received by the collecting bank. The whole business can be said to have been a paper transaction and there is nothing to show that, in the dealings between the two banks, it was understood or intended that the identical money when collected was to be remitted. The fact that appellant accepted the sight-draft and forwarded the same for payment, is an important factor to show that it approved the method employed by the collecting bank in remitting the proceeds of the collection made, and that fact alone may be considered as showing that appellant, in placing the note for collection, did not contemplate or intend that the remittance of the money should be made otherwise than it was, and, by accepting the draft without objections, it must be deemed to have ratified the act of the collecting bank in remitting the money by that method. *Rathbun* v. *Citizens Steamboat Co.*, 76 N. Y. 376, 32 Am. Rep. 321.

The Citizens Bank, as we have seen, was a depositor of the Merchants National Bank of Cincinnati, and as between these two banks, in regard to the funds of the former on deposit in the latter, the relation of debtor and creditor certainly existed. The draft on the latter bank in favor of appellant, in the event it was paid, would serve to reduce the indebtedness which the Citizens Bank held against the Merchants National Bank. The note, as stated, was paid by means of a check drawn by the maker of the paper upon the

collecting bank, and if anything, under the circumstances, can be said to have been set apart by the collecting bank to appellant, it was an amount of the former's indebtedness to the payee of the note as a depositor, equal to the amount of the payee's check, which was accepted in payment of the note. Nothing to the contrary appearing, appellant bank is presumed to have sent the collection to appellee bank and, at least impliedly, consented that it be collected and the proceeds remitted according to the usual and ordinary business methods employed by banks in making collections. Morse on Banks, §220.

The usual and ordinary custom, by which banks are generally controlled in collecting paper, does not require them to hold the money collected separate and apart from its own funds and remit the identical money collected. The collecting bank, generally speaking, in the absence of any arrangement to the contrary, becomes the owner of the money collected and is under an obligation to pay or remit, not the very money received, but an amount of equal value; and while a collecting bank, it is true, receives the paper or claim for collection as the agent of the holder, still, when the money is collected and the proper credit given to such holder or owner, then, as a general rule, the relation of debtor and creditor is created between the parties and the relation of trustee and *cestui que trust* does not arise. This seems to be the prevailing doctrine and is well supported by the authorities. *First Nat. Bank* v. *First Nat. Bank,* 76 Ind. 561, 40 Am. Rep. 261; Morse on Banks, §248; Boone on Banking, §210, and cases cited in foot note 3; *Marine Bank* v. *Rushmore,* 28 Ill. 463; *Tinkham* v. *Heyworth,* 31 Ill. 519; *Akin* v. *Jones,* 93 Tenn. 353, 27 S. W. 669, 25 L. R. A. 523; *Marine Bank* v. *Fulton Bank,* 2 Wall. 252; *Briggs* v. *Central Nat. Bank, etc.,* 89 N. Y. 182; *People* v. *Merchants, etc., Bank,* 78 N. Y. 269, 34 Am. Rep. 532; *People* v. *City Bank,* 93 N. Y. 582; *Bank* v. *Davis,* 114 N. C. 343, 19 S. E. 280; *Klepper* v. *Cox,* 97 Tenn. 534, 37 S. W. 284, 34 L. R.

A. 536; *Howard* v. *Walker*, 92 Tenn. 452, 21 S. W. 897; *First Nat. Bank* v. *Wilmington, etc., R. Co.*, 77 Fed. 401, 23 C. C. A. 200; *Philadelphia Nat. Bank* v. *Dowd*, 38 Fed. 172, 2 L. R. A. 480; *The Butchers, etc., Bank* v. *Hubbell*, 117 N. Y. 384, 22 N. E. 1031, 7 L. R. A. 852.

Any agreement or course of dealing upon the part of a collecting bank, whereby it appears that the latter was at liberty to use the money collected as its own and substitute its own obligation instead thereof, must necessarily destroy all features or elements of a trust in any particular case. *Akin* v. *Jones, supra.* There can be no doubt, we think under the facts, but what it must have been understood by both of the banks that when the note was collected, appellant was to receive a credit upon the proceeds collected, and that appellee, as the collecting bank, might use the money in its own business in like manner as it could funds deposited by its customers in the usual and ordinary course of business. Such deposits, we have seen, create nothing more than the relation of debtor and creditor. In the absence of a knowledge upon the part of the officers or agents of appellee bank, of its being hopelessly insolvent at the time the note was received and collected, its right or power to mingle the proceeds of the note when collected as its own with other funds of the bank, cannot be deemed to have been terminated, and no wrong, under the circumstances, can be imputed to the bank for its acts in collecting and remitting the money by the method stated. Surely, unless it can be held under the particular circumstances in this case, that it was wrongful for the Citizens Bank to collect the note and intermingle the proceeds with the funds of the bank as its own, appellant can have no preferential right over other creditors of the insolvent institution. Courts cannot recognize a mere claim or debt as a trust in order to give it a preference over other creditors of an insolvent person or corporation.

We have not considered the question presented by appellee to the effect that if it were conceded that a trust was im-

pressed in the first instance upon the funds arising out of the collection, such funds, however, were subsequently so dissipated by the bank that no part thereof can be traced to and identified in the hands of the receiver; hence, an enforcement of the trust must fail.

We conclude that, under the facts, the relation of trustee and *cestui que trust* was not created between the banks in question, but simply that of debtor and creditor; and therefore appellant is not entitled to be preferred in its claim over the rights of other creditors. The judgment is therefore affirmed.