### PLANO MANUFACTURING CO. v. AULD.

1. Where a bank collects a note for a stranger, and intermingles the money received with its own moneys, and afterwards becomes insolvent, a trust attaches to the money in possession of the bank to pay such note, though no trust attaches to the general assets of the bank, since it is presumed that the bank paid out its own money before embezzling the money of others.

2. Where the money collected for various strngers by a bank and intermingled with its own funds exceeds the amount of money in possession of the bank, on its becoming insolvent the latter money is to be ratably distributed between the creditors for whom the money was collected.

3. A suit by one for whom a bank collects a note and intermingles the proceeds with its own money against the receiver of the bank, after its insolvency, to impress a trust upon money in possession of the bank, and a partial satisfaction from such source does not prevent such creditor from making application as a general creditor to be allowed to participate in the distribution of the general assets of the bank to the extent of the balance due.

(Opinion filed May 4, 1901.)

Appeal from circuit court, Aurora county. HON. FRANK SMITH, Judge.

Action by the Plano Manufacturing Company against O. P. Auld, as receiver of the Bank of Plankinton, to establish a trust upon the assets in the hands of the receiver. From the judgment in favor of the plaintiff for less that the relief demanded, both parties appeal. Affirmed.

*Kirby & Winsor,* for plaintiff.

The court erred in rendering judgment to the effect that appellant was only to be paid pro rata with other claims out of the amount of money on hand at the time the receiver took possession of the bank, but should have decreed that as there appeared to be assets enough to pay all preferred claims in full, such payment should have been so made, and that the assets of the bank were liable for the payment of these preferred claims, paramount to the claims of general creditors, regardless of the form which such assets had assumed. Kimmel v. Dickson, 5 S. D. 221; McLeod v. Evans, 28 N. W. 173; Peak v. Elicot, 1 Pac. Rep. 499; People v. City Bank, 96 N. Y. 32; Bank v. Insurance Co., 104 U. S. 54.

In equity, when one bearing the relation of agent or trustee to another, wrongfully commingles his principal's property with that of his own, or when such agent misappropriates the property of his principal, the principal can follow such misappropriated funds into any form of property they may assume, and can recover the same, regardless of form, from any person other that a bona fide purchaser or incumbrancer for value. Compiled Laws, Section 3,929; Oliver v. Piatt, 44 U. S. 333; May v. LeClairs, 78 U. S. 217; Duncan v. Jaudon, 82 U. S. 165.

*S. H. Bakewell,* for defendant.

When the Bank of Plankinton mingled the money collected for

the Plano Manufacturing Company with its general funds, it was, if a breach of trust was committed thereby, a conversion of such money, and that thereupon the Plano Manufacturing Company became a simple contract creditor with no claim that has a preference at law over any other simple contract debt. Bank v. Dowd, 2 L. R. A. 480; Nonatuck Silk Co. v. Flanders, 58 N. W. 383; Burnham v. Barth, 62 N. W. 96; Slater v. Oriental Mills, 27 Atl. 443; Little v. Chadwick, 151 Mass. 110; Cavin v. Gleason, 105 N. Y. 256; Bank v. Weems, 6 S. W. 802.

FULLER, P. J. With the judgment in this action to require the receiver of an insolvent banking corporation to pay the full amount of a promissory note collected for plaintiff by the bank shortly before its failure neither party is satisfied, and both have appealed. The facts as found by the court are undisputed, and substantially these: The note, being for $879, was paid to the bank by the maker thereof on the 15th day of December, 1899, and the amount was not remitted to the owner, but commingled with the funds of the bank. On the 22d day of January, 1900, when the receiver took possession of the assets of the bank, which had in the meantime become insolvent, he found only $2,185.37 in cash. Concerning the condition of the bank and its relation to some other creditors the court finds as follows: "That during the month of September, 1899, the German-American Savings Bank, of Burlington, Iowa, sent to the said Bank of Plankinton, for collection and return, three bonds issued by Aurora county in the sum of $500 each. That thereafter the treasurer of Aurora county took up said bonds by giving said bank a check for the amount. That the said sum of $1,547 has never been paid to the said German-American Savings Bank, nor any part thereof, but said money was mixed and mingled with all other money in the Bank of Plankinton at the time;

and the said German-American Savings Bank has demanded the said amount of this receiver, claiming and insisting that the same is a trust fund in the hands of this receiver. That during the month of December, 1899, the Pittsburg Plate-Glass Company of Davenport, Iowa, sent to the Bank of Plankinton, for collection and return an acount of $396.56 against J. D. Bartow. That thereafter, on the 18th day of December, 1899, the said J. D. Bartow paid to the said Bank of Plankinton the sum of $396.56 in settlement of said account. That said sum has not been remitted to the said Pittsburg Plate-Glass Company, but was mixed and mingled with all other moneys in the Bank of Plankinton at the time. That the said Pittsburg Plate-Glass Company has demanded the said amount of this receiver, claiming and insisting that the same is a trust fund in the hands of the receiver. That on or about the 3d day of November, 1899, Curtis & Romaine, of New York, sent to the Bank of Plankinton, for collection and return, a court house and jail bond issued by Aurora county, amounting to $517.50. That thereafter the treasurer of Aurora county took up said bond, and paid the amount due thereon in full. That the said sum has not been remitted to the said Curtis & Romaine, but was mixed and mingled with the other money of the said bank at that time; and the said Curtis & Romaine have demanded the said amount if this receiver, claiming and insisting that the same is a trust fund in the hands of the receiver. That on or about the 16th day of December the Bank of Plankinton received from one George M. Hurd, through the Fidelity Trust and Guarantee Company, a warranty deed for the purpose of collection and remittance of the consideration mentioned in said deed, to-wit: the sum of $800, from one W. G. Groves. That thereafter the said W. G. Groves paid to the Bank of Plankinton the said sum of $800 for said deed, and the said sum of $800 has not been remitted to the said

George. M. Hurd, or any one for him, but was mixed and mingled with other moneys of the bank at the time. That the said George M. Hurd has demanded said amount of this receiver, and has brought suit therefor, claiming and insisting the same is a trust fund in the hands of this receiver. That there are numerous other claimants having claims of like character to the above mentioned, aggregating the sum of $1,000, and nearly all of them have demanded of this receicver their respective amounts, claiming and insisting that they are trust funds in the hands of this receiver. That the entire property—notes, money, and all things of value—belonging to said Bank of Plankinton, or under its control, at the time of its failure on January 9, 1900, did not exceed the sum of $25,000, and the liabilities of said Bank of Plankinton at that time were about the sum of $45,000; and that said Bank of Plankinton was substantially in that financial condition for about one year prior to its failure, and was during the entire year prior to its failure insolvent. That all of the moneys deposits, funds, and cash of every kind and character received by the said Bank of Plankinton for a year prior to its failure were mixed and mingled together in one mass, and at all times were so kept and mingled together in the cash receptacle in said bank in the vault thereof until the same was paid out or disposed of in the course of business of said bank, and on the 9th of January, 1900, the time of the failure of said bank, there was but $2,185.37 left in the said Bank of Plankinton." From the foregoing facts the court concluded as a matter of law that plaintiff and the other claimants mentioned in its findings are preferred creditors, each being, in the due course of administration, entitled to a pro rata distribution of the $2,185.37. The contention of counsel for the Plano Manufacturing Company is that the court should have decreed the amount of its note to be a trust fund, and

ordered the payment thereof immediately from the aggregate assets of the bank, while counsel for the receiver maintains that the court erred in not finding plaintiff to be, as a matter of law, but a simple contract creditor, without any preference whatever.

Upon the theory that the receiver is but a servant of the court, and not a party aggrieved by the decision of which he complains, a motion is made in this court to dismiss his appeal. Assuming, without deciding, that as the representative of all the creditors a receiver has the right to appeal from the order or decree affecting funds in his charge, we will pass to a consideration of the questions presented by counsel for the Plano Manufacturing Company. If, as claimed by them, the receiver is a mere instrument of the court, he is certainly no more the special representative of the party bringing the action than that of any other person interested in or having a claim upon funds in *custodia legis,* whose rights, so far as ascertainable, it is the duty of the court to protect. Being thus charged through the instrumentality of the receiver, with the duty of performing, so far as capable, all the obligations of the insolvent bank, the condition of its assets and its relation to all persons interested, as well as the legal effect of its contracts, express or implied, are subjects demanding most careful consideration. According to an invariable rule, money deposited by a general customer, or collected for him upon a note with the understanding that the same shall be passed to his account, kept subject to check, the entire amount belongs to the bank, and the relation of debtor and creditor thus voluntarily created precludes him, in case the bank becomes insolvent, from participating in the distribution of funds acquired by the bank in violation of the trust which adheres to the relation of principal and agent. Mr. Thompson's view of the point is thus expressed: "A distinction must be admitted, resting on clear

grounds, where the person who sends the paper to the bank for collection has no general deposit with the bank. Here, as soon as the money is collected by the bank, and comes into its treasury, it is not passed as an addition to the general balance of the depositor of the paper, such as, under ordinary circumstances, may reasonably be supposed to impress it with the character of a general deposit; but the collecting bank clearly stands in the position of any other collecting agent or bailee. The money which it has collected does not belong to it. The performance of the service required of it does not create the mere relation of debtor and creditor between it and the person to whom the service has been rendered, such as arises in the case of an ordinary bank deposit, but the money belongs to such person, and must be restored to him by the receiver in full." 5 Thomp. Corp. 7097. Had the bank transacted its business agreeably to the general custom of such institutions, the money collected upon the note could not, in any sense, become even a special deposit, and the relation of debtor and creditor between the bank and the corporation transmitting the note for collection and return was never contemplated. The character of the transaction and the nature of the service required placed the collecting bank and the owner of the note in the attitude of principal and agent, and the money collected never belonged to the bank, nor did its retention create, in a legal sense, the relation of debtor and creditor. According to the true doctrine, the relation of bailor and bailee continued after the mingling of the funds, and, as the money never became assets of the bank, general creditors are entitled to no share in its distribution. One dollar being the same as another in every material respect an earmark is not essential to its identification, and, if a sufficient amount in kind remains in the vault of an insolvent bank, it may be reclaimed by its owner, to the exclusion of general creditors. A pre-

sumption governing modern courts in tracing a trust fund wrong -
fully mingled by a trustee with his own funds, out of which aggre
gate he has made disbursements in the due course of business, is
that he used his own money in preference to embezzling that of oth-
ers. So says the supreme court of Wisconsin in its latest utterance
upon the subject (Taylor v. Bank, 62 N. W. 99) : "When a trus-
tee mingles trust money with his own in a bag, or box, or bank ac-
count, the right of the beneficiary attaches to have all that belongs to
him out of the bag, box or account, and whatever the trustee may
take out will be deemed or presumed to have been taken from his
own, instead of the trust, funds." Applying that doctrine to this
case, the inference must prevail that the remaining money, which
passed into the hands of the receiver, belongs to the persons for
whom collections were made, and should be restored to them accord-
ing to the principles of equity and good conscience. Kimmel v.
Dickson, 5 S. D. 221, 58 N. W. 561, 25 L. R. A. 309. In the very re-
cent case of Richardson v. Redemption Co., 42 C. C. A. 619, 102
Fed. 780, the court say : "There should be no question about this
doctrine on principle. If one's money is invested in land, the title
being taken in another's name, equity creates a resulting trust in the
land as against the wrongdoer. If an agent, bailee, or trustee invests
another's money in personal property, a trust results. If one's
money is lent, and a note or bond taken, the owner of the money
can have a lien or trust declared on the note or bond to secure his
money so used. Numerous cases show that money can be traced
into other assets, notes, bonds, and stocks. There is no good reason
for not applying the same doctrine to money, the measure and rep-
resentative of all property. If one's money is used with other money
in buying a bond, equity can fasten a lien on the bond, and sell it to
reimburse the one whose money has been so used. So we think,

if one's money is wrongfully mingled with a mass of money, that equity can direct the possessor and wrongdoer, or his successor, to take out of the mass a sum sufficient to make restitution." Central Nat. Bank v. Connecticut Mutual Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693; People v. City Bank of Rochester, 96 N. Y. 32; Bank v. Weems, 69 Tex. 489,6 S. W. 802; Peak v. Ellicott, 30 Kan. 156, 1 Pac. 499; Harrison v. Smith, 83 Mo. 210; Quin v. Earle (C. C.) 95 Fed.723; Board v. Wilkinson (Mich.) 78 N. W. 893. The general assts of the bank not being available as a trust fund, and the money received on collections being insufficient to satisfy all legal demands threon, the trial court was fully justified in its plan of. distribution among those whose claims of like character were clearly established without objection. Such ratable distribution is in the interest of justice, and tends to prevent a multiplicity of actions. Should the Plano Manufacturing Company deem itself entitled to a portion of the remaining assets, there is nothing to prevent an application therefor, and there is no merit in the contention that the court should have allowed it in this proceeding to participate as a general creditor to the extent of its unpaid balance. We think the trial court was right in every particular, and the judgment appealed from is affirmed.