## American National Bank v. Owensboro Savings Bank & Trust Company's Receiver.

(Decided January 12, 1912.)

## Appeal from Daviess Circuit Court.

Banks and Banking—Collateral—Agreement by One Bank to Collect for Another—Failure to Remit—Insolvency of Collecting Bank—Distribution of Assets—Preference.—Where a savings bank discounts a note secured by collateral which it agrees to collect and apply on the note, and then sells and discounts the note to another bank, and collects the collateral and fails to remit, the relation between the two banks is that of debtor and creditor merely, and the bank at which the note is re-discounted is not entitled to a preference over other creditors in the distribution of the assets of the savings bank upon its becoming insolvent.

GEORGE W. JOLLY for appellant.

R. A. MILLER and R. S. TODD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On April 25, 1908, T. A. Pedley was appointed receiver of the Owensboro Savings Bank & Trust Company. He immediately qualified and took charge of the assets of the bank. On May 12, 1908, he brought suit against the Savings Bank and its creditors to settle the estate. On April 22, 1910, appellant, American National Bank, appeared in court and filed a petition which it asked to be treated as its answer. To this petition and answer a demurrer was sustained in so far as it asserted a lien on or preference to the fund or any part thereof alleged to have been collected by the Owensboro Savings Bank & Trust Co. of John D. Williams, agent of the Brazilian Government. Appellant having declined to plead further the petition and answer were dismissed to that extent. To review the propriety of this ruling this appeal is prosecuted.

It appears from the petition and answer that the Owensboro Seating & Cabinet Company, a corporation, on January 22, 1908, executed and delivered to James H. Parrish & Son a negotiable note for $1,034.56, payable in three months. During the same month James H. Parrish & Son discounted this note to the Savings Bank. On February 17, 1908, and before the maturity of the note, the Savings Bank rediscounted the note at the American National Bank for a full and valuable consideration. No part of the note has been paid. When the note was executed the Owensboro Seating & Cabinet Co. had a contract with the Brazilian Government to manufacture for it school desks and seats for the sum of $2,790. This contract was delivered and pledged to the Savings Bank as collateral security for the ultimate payment of the note, with the understanding and agreement between the Owensboro Seating & Cabinet Co. and the Savings Bank that it would collect said claim, and apply a sufficiency of the moneys collected to the payment of the note. The desks and seats were manufactured and accepted. The Savings Bank drew a draft on the Agent of the Brazilian Government for $2,790. The draft was paid. With full knowledge of the agreement that enough of the proceeds of the draft to pay the note in question should be applied to the payment of the note, the Savings Bank, knowing that James H. Parrish had no right, title to or interest in said fund to the extent of $1,034.56 and that he and said Savings Bank were in duty bound to transmit same to appellant, wrongfully and without right, and without the knowledge or consent of appellant, placed the proceeds of the draft to the credit of "J. H. Parrish, President," and commingled the same with the funds of the bank. Same did not become a deposit or debt of said Savings Bank, but was held by it for appellant bank which did not become cognizant of the facts until after the appointment of the receiver. The petition and answer concludes as follows: "Said Pedley, Receiver, declines or refuses to pay to your petitioner said $1,034.56 or any part thereof in performance of said trust, or at all, and said Pedley, Receiver as aforesaid, still holds without right, said money. Wherefore, the petitioner, The American National Bank, prays the court to order and direct its said receiver herein, the plaintiff, T. A. Pedley, to pay to it the said sum of one thousand thirty-four dollars and fifty-six ($1,034.56) cents with interest thereon from the

maturity of said writing, namely, April 22, 1908, for its cost herein expended, and for all general relief.''

It is repeatedly alleged in the petition and answer and earnestly argued on this appeal that the transaction in question created between the Savings Bank and appellant the relation of trustee and cestui que trust. It is not claimed that the original and identical money collected by the Savings Bank is intact. On the contrary it is alleged that the money was placed to the credit of ''James H. Parrish, President,'' and commingled with the other funds of the bank. Nor does it appear that there was as much as $1,034.56 in cash in the Savings Bank when the receiver was appointed. The question is, Is appellant entitled to a preference over the other creditors in the distribution of the assets of the insolvent Savings Bank? This is not a case of a special deposit, so the rule governing such deposits has no application. There is nothing in the facts of this case to differentiate it from the case of commercial paper transmitted in the ordinary course of business by one bank to another for collection. In each case it is the duty of the collecting bank to account to the other for the proceeds, and the same rule of law applies. While there is very respectable authority to the contrary, the generally accepted doctrine on the subject is that the relation between a bank transmitting paper for collection and the bank receiving and collecting such paper and mingling its proceeds with its other funds is that of debtor and creditor merely, and the creditor bank has no lien upon or for moneys collected, and no preference over the other creditors of the receiving bank. (Richmond First National Bank v. Davis, 114 N. Car., 343; Commercial Bank v. Armstrong, 148 U. S., 50; Merchants, etc., Bank v. Austin, 38 Fed. Rep., 25; People v. City Bank, 93 N. Y., 582; National Butchers', etc., Bank v. Hubbell, 117 N. Y., 384; Reeves v. State Bank, 8 Ohio St., 465; Nonotuck Silk Company v. Flanders, 87 Wis., 237; Henry v. Martin, 88 Wis., 367, overruling McLeod v. Evans, 66 Wis., 401.) While the relation is one of trust in the ordinary sense of that word, in that the forwarding bank has confidence in the receiving bank, and therefore entrusts it with the collection of the paper, the relation is not one of trust in the legal sense; that is, such as to impress upon the money collected the character of a trust fund payable out of the assets of an insolvent bank in preference to other debts. This view of the law is well

·expressed by the Supreme Court of Mississippi in Billingsley v. Pollock, 69 Miss., 759, 30 Am. St. Rep., 585, where the court, after stating its unwillingness to establish the proposition that a correspondent of a bank whose claim it has collected and failed to pay over, has an equitable lien on all the assets of the bank, securing precedence over all other creditors of the bank, said:

"Some of the courts so hold, but we will not follow their lead to this absurd result. It is enough to allow the correspondent who sends his claim to a bank for 'collection' to pursue and reclaim his own, without depriving others of their rights. There is no such magic in the word 'trust' as to convert all the assets of a bank into a fund to secure one who deals with it for convenience of collecting claims, in preference to others who trust it and deal with it. * * * We should not be beguiled by the use of words, and call one claim a 'trust' in order to secure it a preference over 'debts.' Wherever there is a trust, it may be enforced as such, but calling one sort of claim a trust merely to place it on a better footing is not allowable."

Judgment affirmed.