[No. 2988, Jan. 7, 1927.]

# [STATE v. McKINLEY COUNTY BANK. In re ROBB et al.]

## [252 Pac. 980.]

### SYLLABUS BY THE COURT

1. Whether a bank, as to the proceeds of paper held by it for collection, is a debtor or a trustee, depends upon the agreement as to the disposition of the proceeds.

2. Instructions to return the proceeds of a collection, according to banking custom of which judicial notice is taken, authorize the bank, on remitting by draft, to appropriate the money collected and treat it as its own.

3. The payee of a draft, drawn and remitted, pursuant to instructions, in return of the proceeds of a collection, is a creditor not entitled to preference in the assets or cash resources of an insolvent bank in the hands of its receiver.

4. A deposit made in an insolvent bank, whose officers know of its insolvency and have fixed the time for its suspension, is received in fraud, and may be followed as a trust.

5. It is not necessary to the impressment of the trust that the deposit made as in 4, supra, be identified as a specific thing if it can be traced to the bank's cash resources, since there is a presumption that payments from such cash resources, after receipt of the deposit, were from the bank's own funds, and not from those held in trust.

6. A deposit made as in 4, supra, is proper basis of a "preference," when it appears that the cash resources in the bank, from the time of such deposit, and which came into the hands of the receiver, exceeded the amount thereof.

Appeal from District Court, McKinley County; Holloman, Judge.

Action by the State against the McKinley County Bank, in which Frank B. Mapel was appointed receiver, and in which Everett Robb and others presented claims. From a judgment impressing assets in the hands of the receiver with trusts in favor of the claimants, the receiver appeals. Affirmed in part, and reversed in part, and remanded, with directions.

[17] CJ p. 617 n. 72.  [2] 7CJ p. 616 n. 68.  [3] 7CJ p. 616 n. 70.  [4] 7CJ p. 751 n. 80.  [5] 7CJ p. 751 n. 80.  [6] 7CJ p. 752 n. 81.

148    SUPREME COURT OF NEW MEXICO

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

H. C. Denny, of Gallup, and John F. Simms, of Albuquerque, for appellant.

J. W. Chapman, of Gallup, for appellees.

### OPINION OF THE COURT

WATSON, J.   The district court of McKinley county rendered judgment impressing the assets in the hands of the receiver of the McKinley County Bank with a trust in favor of appellee Robb in the sum of $1,160, and in favor of appellees the Colorado Milling & Elevator Company and the First National Bank of Pueblo, Colo., in the sum of $1,837.03, requiring such sums to be paid out of such assets prior to any distribution to unsecured creditors. The receiver has appealed from the judgment.

As we desire the exact facts upon which this decision is based to appear in the opinion, we insert here the findings of the trial court, the correctness of which is not in controversy:

"(1)   On the evening of Friday, the 17th day of August, 1923, after the close of business, a meeting was held in the city of Gallup by the officers of the McKinley County Bank, together with some of their friends and other banking officials, at which time the advisers of the bank and the officers then present determined and knew that the bank was insolvent, and it was agreed at this time that the bank would continue to run on Saturday, August 18, 1923, keeping all the transactions of that day separate from former business, and at the closing of business on Saturday at noon the bank should be placed in the hands of the state bank examiner.

(2)   The bank opened on Saturday, August 18, 1923, and remained opened until noon, at which time it was closed and placed in the hands of the state bank examiner of New Mexico.

(3)   During Saturday morning, August 18, 1923, Mrs. W. G. Hearst, who was the holder of a certificate of deposit in the said bank, which she had held for some time previous, came into the bank accompanied by Mr. Everett Robb, the claimant, and surrendered her certificate of deposit to Mr. Sam Bushman, the vice president of the bank, with the request that her note in the bank be canceled out of the proceeds of the certificate of deposit, and that the balance of the certificate, amounting to $1,160, over and above her note, be paid to Mr. Robb, who was then present. Mrs. Hearst was making a real estate deal with

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

Mr. Robb. Mr. Bushman surrendered Mrs. Hearst's note, took up her certificate of deposit and gave to Mr. Robb an ordinary deposit slip in his name for $1,160, which Mr. Robb accepted and left · the bank. The bank. was closed at noon on the same day. The deposit slip for the credit of Mr. Robb was not worked into the bank's books until about the 20th day of the month of August, when the bank examiner made the entry through one of his deputies in charge of the bank. No actual money played any part in the transaction, which was consumated entirely with the certificate of deposit of the bank in favor of Mrs. Hearst and by the deposit slip for the balance, after deducting Mrs. Hearst's note, which deposit slip was given to Mr. Robb, who had no knowledge that the bank was then insolvent.

"(4) That on or about the 14th day of August, 1923, the First National Bank of Pueblo, Colo., a national bank-ing corporation, forwarded to the McKinley County Bank for collection and remittance a check of $1,835 drawn by the Gallup Mercantile Company on the order of the Colo-rado Milling & Elevator Company of the Pueblo Flour Mills, the trade-name of that corporation, and was by it indorsed to the First National Bank of Pueblo. On Friday, August 17, 1923, the McKinley County Bank collected the amount of the check, $1,835 from the Gallup State Bank, and on the same day gave its draft No. 13584 for $1,837.03 on the Continental & Commercial National Bank of Chicago, drawn in favor of the First National Bank of Pueblo, and on that day, Friday, August 17, 1923, deposited the draft in the mail, addressed to the first National Bank ˙of Pueblo. The draft was not paid. The first National Bank of Pueblo did not have an account with the McKinley County Bank, nor did the McKinley County Bank have an account with the First National Bank of Pueblo. The McKinley County Bank received the $1,835 from the Gallup State Bank, and while the sum of $1,835 was not kept separate or ear-marked in any way by the McKinley County Bank, there was on hand in the McKinley County Bank more than that amount of cash at the time it closed, and the receiver, when he took over the McKinley County Bank, had more than that amount of cash on hand. · That the letter of transmittal accompanying the check from the First National Bank of Pueblo to the McKinley County Bank listed the item forwarded,. and contained the words 'for credit or return.' That the said words are generally understood by the banking profession to mean, and it is the custom, that when the forwarding bank has an account with the cor-responding bank the money realized from the collection shall be placed to the credit of the forwarding bank, and where it does not have an account with the corresponding bank the latter shall forthwith, upon making collection, immediately remit to the forwarding bank the money so collected."

We find it convenient to dispose, first, of that part of the judgment bearing upon the claim of the Colorado

150     SUPREME COURT OF NEW MEXICO

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

Milling & Elevator Company and First National Bank of Pueblo. To support this branch of the judgment reliance is placed upon First National Bank of Raton v. Dennis, 20 N. M. 96, 146 P. 948. Regarding that case, appellant contends that, "in so far as the opinion announces the rule that the relation of debtor and creditor did not exist," the holding is not sound in principle, is contrary to the weight of authority, and should be overruled. He further contends that the decision is not controlling because the case at bar is distinguishable.

It is plain that the two cases are distinguishable in their facts. In the Dennis Case the collecting bank, instructed to collect and "remit or return" the amount collected, violated its instructions and failed to make remittance. In the case at bar, the collecting bank, instructed to collect and return, strictly observed its instructions, and made remittance by Chicago exchange on the very day of collection. Whether this distinction is important will appear as we proceed to determine the true import of the Dennis decision. It must, of course, be interpreted in the light of the facts there existent and of the contentions there made.

Both counsel in the Dennis Case admitted the general rule as there laid down, that, in the absence of an agreement to the contrary, the collecting bank and the owner of the paper sustain to each other, in respect to the money collected, the relation of debtor and creditor. As to that general rule, we have no question here.

The appellee in that case contended, however, that the general rule was subject to but one exception, namely, that, in case the proceeds of the collection came into the hands of the bank, when insolvent to the knowledge of its officers, the relation of trustee and cestui que trust arose with respect to such proceeds, because of the fraud in receiving the money under such circumstances. Such a situation was not present in the Dennis Case; nor do we have it here.

This court, however, did not accede to the appellee's contention just stated, but held that another case of

fraud constituted an exception to the general rule, namely, a violation by the collecting bank of its agency agreement. It was because of fraud of that kind that the trust was declared in the Dennis Case. There was none such in the case at bar.

[1] If we have so far read aright, it was the fraudulent conduct of the bank which gave rise to the trust. Further, it is the true intent of the agreement of the parties which determines the relation existing between them, whether of debtor and creditor, or of trustee and beneficiary.

In developing his views, Mr. Justice Hanna, the learned author of the court's opinion, said:

" * * * Where a special agency is created and the collecting bank has no authority to hold and credit proceeds of paper, but is bound by the agreement to remit them immediately to its correspondent (or owner or holder), the relation of trustee and beneficiary is created, and the money collected, or its equivalent, can be recovered from the assignee of the insolvent bank, if the fund be traceable."

Thus it was the view of this court that instructions to collect and remit created a special agency and the relation of trustee and beneficiary. That such is the quite uniform holding as regards the relation of the parties before the collection is made, see the opening paragraph of case note, 24 A. L. R. 1152, citing 3 R. C. L. p. 634, § 262.

[2] Counsel for appellees assumes, as some courts seem to have done, that this trust relation, once arising from the agreement of the parties, cannot change, but must continue to the end of the transaction. We doubt the soundness of this view. An undertaking to collect necessarily makes the bank an agent. So long as it continues to hold for collection, that status, of course, continues. But, having discharged that part of its duty, which requires it to collect, it is no longer the holder of the paper intrusted to it, but of the proceeds thereof. Its status as a holder of the proceeds depends upon its instructions or the agreement governing the disposition of the proceeds. This is mere corollary of the general rule laid down in the Dennis Case. In the absence of

152    SUPREME COURT OF NEW MEXICO

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

agreement, the collecting bank is authorized to credit
the proceeds. Crediting them, it becomes a debtor.
Its status changes from trustee of the paper to a debtor
as to the proceeds. But, as held in the Dennis Case,
if the collecting bank is instructed to remit immediate-
ly, its failure to do so in fraud of the agreement does
not result in any change of status; that is to say that,
being a trustee to begin with, the bank cannot free it-
self from its liability as such by an act of its own in
violation of its contract. It does not follow, however,
that it cannot free itself from such liability by a com-
pliance with its contract. So, it seems to us, that it is
not inconsistent with the Dennis decision to say that,
where there is a special agreement governing the dis-
position of the proceeds of the collection, the status
of the collecting bank may or may not change, and
changes as and when contemplated by such agreement.
Corporation Commission v. Bank, 137 N. C. 697, 50 S. E.
308, 2 Ann. Cas. 537, citing 3 Am. and Eng. Ency. of
Law (2d Ed.) 819; Union National Bank v. Citizens'
Bank, 153 Ind. 44, 54 N. E. 97.

It seems to us, therefore, that the Dennis Case is not
controlling here, and leaves open the real question in
this case, namely, If a bank, intrusted with paper
for collection, and intrusted to remit the proceeds, does
collect, and does remit, is it, from the time of remitting
a debtor or a trustee?

It is quite plain from the authorities that if author-
ized, expressly or by implication arising from general
custom, or special course of dealing, to hold and credit,
the bank, upon giving proper credit, becomes a debtor.
It is equally plain that, if instructed to hand over or
remit the very thing collected, the bank remains a trus-
tee or bailee. If a mere debtor, the creditor is entitled
to no preference of payment. If a bailee or holder of a
special deposit, the bailor may follow his property so
far as he can trace it. These well-established rules are
the points of departure for the great body of the de-
cisions. Most of the litigated cases naturally have to
do with situations lying between those stated.

Naturally the principles involved in the Dennis Case and in the case at bar have been applied in a great variety of fact situations. The decisions are very confusing. The conclusions reached and the theories involved are conflicting. See, generally, case note, 86 Am. St. Rep. 769; case note, 24 A. L. R. 1148; case note, L. R. A. 1917F, 603; Michie on Banks and Banking, § 166. We shall make no attempt to harmonize, classify, or distinguish. We shall confine ourselves to the question above stated, and seek to indicate the reasons and the authori-. ties which persuade us. Where we have been influenced by the reasoning and principle announced in particular decisions, we shall cite them, regardless of the fact that in some of them the conclusion reached is not the conclusion we reach here.

We assume, at the outset, that the remittance made by Chicago Exchange was one authorized by the instructions. The custom of banks to remit by exchange is so universal as properly to be matter of judicial notice. A requirement that the very money collected be remitted is so contrary to the customs of banking that it cannot be implied. Bowman v. First Natl. Bank. 9 Wash. 614, First National Bank of Richmond v. Davis, 114 N. C. 343, 19 S. E. 280, 41 Am. St. Rep. 795. It follows, then, that the appellees consented to such legal relation as would necessarily follow when such a remittance was made. They agreed, in lieu of the very money collected, or of any money, to reveive the bank's draft on its correspondent or depository.

The bank, having rightfully remitted its draft, was it seems to us clearly entitled and expected to appropriate the money and to mingle it with its own funds. If not, then in this very ordinary banking transaction a breach of trust is always committed by the collecting bank. Hecker-Jones-Jewell Milling Co. v. Cosmopolitan Trust Co., 242 Mass. 181, 136 N. E. 333, 24 A. L. R. 1148; Sayles v. Cox, 95 Tenn. 579, 32 S. W. 626, 32 L. R. A. 715, 49 Am. St. Rep. 940; Akin v. Jones, 93 Tenn. 353, 27 S. W. 669, 25 L. R. A. 527, 42 Am. St. Rep. 921; U. S. National Bank v. Glanton, 146 Ga. 789, 92 S. E. 625, L. R.

154     SUPREME COURT OF NEW MEXICO

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

A. 1917F, 600; Union National Bank v. Citizens' Bank, supra; Bank v. Davis, supra; Commercial Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363. See, generally, case note, 38 L. R. A. (N. S.) 146, and case note, L. R. A. 1917F, 603.

[3] The bank became thus according to the implied terms of the agreement, the owner of the money and liable to appellees as the drawer of a bill of exchange. The original owner surrendered his title to the money and became the owner of the bill. The money dropped out of the case as the basis of the relation, and the draft came in. We recognize none of the earmarks of a trust in the relation between the drawer and payee of a bill of exchange. So much for our theory. The practical view is that appellees, in entering into the contract with the bank, trusted its credit as other classes of customers did. They were willing to exchange their money for the bank's draft, just as another customer was willing to exchange his for a certificate of deposit. Either might have insured his safety by express agreement— the one, by stipulating that the very money collected should be remitted; the other, by making a special deposit or bailment. As a matter of convenience, and in his own interest, each waived the safeguard. We are unable, either theoretically or practically, to distinguish between them or to prefer one claim to the other. We can see no equity in favor of the appellee superior to that of one, who, having a payment to make at a distant point, paid his money into the bank and received therefor the bank's draft with which to make his remittance. Sayles v. Cox, supra; American National Bank v. Owensboro Savings Bank & Trust Co.'s Receiver (Pedley) 146 Ky. 194, 142 S. W. 239, 38 L. R. A. (N. S.) 146, citing Billingsley v. Pollock, 69 Miss. 759, 13 So. 828, 30 Am. St. Rep. 585; First Nat. Bank of Richmond (Bowman) v. Davis, supra.

[4] We now come to the claim of Everret Robb. If the transaction in question is to be considered the equivalent of the deposit of $1,160 in cash, we do not understand appellant to contest the correctness of the

JANUARY TERM, 1927    155

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

judgment in Robb's favor. In such case it would be a trust because of the fraud of the bank in receiving the deposit while insolvent to the knowledge of its officers. But appellant contends that it was not equivalent to a cash deposit; that it was a mere bookkeeping transaction, a debit to Mrs. Hearst, and a credit to Mr. Robb; that neither the assets nor the cash resources of the bank were affected by it; that, if there is to be a trust, there must be a res to which it can attach, and upon which it can be impressed, and which can be identified specifically, or at least followed into the bank's cash resources in augmentation thereof.

[5, 6]   Ordinarily, as between the bank and Robb, it would be entirely immaterial whether the transaction took the form it did, or whether he required Mrs. Hearst to obtain from the bank the cash on her certificate, and to pay it to him; he, in turn, depositing it. Such a formality, ordinarily so useless, so contrary to banking custom, would have been entirely superfluous, except as it might serve to satisfy some requirement of the law, to complete a chain of fact necessary to support a delicate and tenuous theory. A court of equity in the endeavor to determine conflicting rights, is not naturally impressed with a distinction so unsubstantial. Nonotouck Silk Co. v. Flankers, 87 Wis. 237, 58 N. W. 383; Darragh Co. v. Goodman, 124 Ark. 532, 187 S. W. 673; Goodyear Tire & Rubber Co. v. Hanover State Bank, 109 Kan. 772, 204 P. 992, 21 A. L. R. 677; Federal Reserve Bank of Richmond v. Peters, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742.

The situation was created by the unfortunate decision of the bank officials to keep the institution open one day after they were satisfied of its insolvency, and had decided upon and determined the time for its closing. So to do was unfair to its creditors as a whole. Attempting to make special the deposits received during that day, instead of general, as the depositors intended, could avoid but a part of the inequity. Those fortunate enough to withdraw money on that day enjoyed an undeserved advantage over the other depositors. Pass-

ing that, the important question is this. On what principle may it be said that A., who deposited $1,160 in cash, intending it to be a general deposit, can claim a preference based on a trust, because the bank official, without indicating his intention, decided to receive it as a special deposit, placing the deposit slip and the money in a separate envelope; while B. intending exactly the same thing, can claim no preference because the bank official failed to do what in conscience and consistency, he should have done—failed to take $1,160 from the funds of the bank and place it in an envelope with B.'s deposit slip?

No doubt the bank officials supposed that depositors of the last day would recover their deposits, because they were made special bailments merely. In this we think they erred. The general or special nature of a deposit depends upon contract. There can be no contract where there is no meeting of minds. The real reason for the recovery of A. is not that his deposit was special. It is because it was fraudulent. Being carefully kept separate, it was capable of identification. B.'s deposit was equally fraudulent, but not capable of identification as a specific thing. This matter of identification, it seems to us then, is the only distinction.

It is, of course, true, that there must be a res upon which to impress a trust. It is conceded that money kept separate in an envelope is such a res. But if the bank officials had been consistent in their policy of protecting last day depositors, $1,160 would have been found in Robb's envelope. Equity regards that as done which ought to have been done. If it ought to have been done, and could legally have been done, why should it not be regarded as done? Assuming, because counsel do, that payments to creditors under the circumstances in this case were legal, we do not hesitate to say that we have a res to which the trust can attach. The res ought to be in an envelope with Robb's name on it. It is in fact intermingled with, and its identity lost in, the mass of the

JANUARY TERM, 1927        157

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

bank's money, now in the hands of the receiver. But the identity of money in a bank is of no more practical importance than the identity of so much wheat of a certain grade in a warehouse. Thompson v. Gloucester City Sav. Inst. (N. J. Err. & App.) 8 A. 97; Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 N. W. 21, 86 Am. St. Rep. 769; Federal Reserve Bank of Richmond v. Peters, supra. If it can be traced to the mass, it is sufficiently identified. It is traced to the mass by the bank's books. That it remained there is satisfactorily shown by the fact that more than the amount of it was in the bank in cash, and came into the hands of the receiver; and by the presumption, often indulged in such cases, that, in payments made after the improper mingling, the bank paid out its own funds and not money held in trust. Western German Bank v. Norvell (C. C. A.) 134 F. 724; Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85; State v. Bank of Commerce (Edwards) 61 Neb. 181, 85 N. W. 43, 52 L. R. A. 858, citing State v. Bank of Commerce, 54 Neb. 725 N. W. 28; Nonotuck Silk Co. v. Flanders supra; Plano Mfg. Co. v. Auld, supra; Darragh Co. v. Goodman, supra; Massey v. Fisher (C. C.) 62 F. 958.

In Daughtry v. Bank, 18 N. M. 119, 134 P. 220, such a presumption was relied upon by the plaintiff. It did not avail because, for lack of necessary allegations in the complaint, there was no room for its operation. The validity of the presumption, this court did not there question. In First National Bank v. Dennis, supra, counsel, in conceding the sufficiency of the allegations of the complaint "in reference to the tracing of the funds into the hands of the receiver," no doubt recognized that presumption. It is practical, satisfying to the reason, well supported by authority, and we now adopt it.

We conclude, therefore, that the judgment awarding preference to appellee Robb should be affirmed, and that the judgment awarding preference to appel-

158    SUPREME COURT OF NEW MEXICO

State v. McKinley County Bank. In re Robb et al., 32 N. M. 147

lees Colorado Milling & Elevator Company and First National Bank of Pueblo should be reversed, and the cause remanded, with directions to proceed consistently herewith, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.