**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 12, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LUKE MYERS, on behalf of himself and
those similarly situated,

    Plaintiff - Appellee,

v.

PAPA TEXAS, LLC,

    Defendant - Appellant,

and

GUILLERMO PERALES; DOE
CORPORATION 1-10; JOHN DOE 1-10,

    Defendants.

No. 25-2020
(D.C. No. 2:23-CV-01096-DHU-JHR)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Luke Myers sued his employer, Papa Texas, LLC, but Myers's employment

agreement included an arbitration clause. The district court granted Papa Texas's

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

motion to stay Myers's lawsuit in favor of arbitration. *See* 9 U.S.C. § 3 (granting courts authority to stay a lawsuit about a dispute the parties had previously agreed to arbitrate). Later, however, the district court found Papa Texas had defaulted in arbitration. *See id.* (requiring that the party seeking a stay not be "in default in proceeding with such arbitration"). The court therefore lifted the stay, allowing Myers's suit to proceed in federal court.

Papa Texas appeals the district court's order lifting the stay. We have jurisdiction under 9 U.S.C. § 16(a)(1)(A) & (B), and we affirm.

## I.   BACKGROUND & PROCEDURAL HISTORY

### A.   Myers's Employment with Papa Texas

Papa Texas franchises and operates Papa John's pizza stores. In January 2023, Papa Texas hired Myers to work as a delivery driver at one of its stores in Las Cruces, New Mexico. As a condition of employment, Myers signed a document agreeing to submit employment disputes to arbitration with the American Arbitration Association (AAA).

### B.   Myers's First Lawsuit

In May 2023, Myers filed a class and collective action complaint in the United States District Court for the District of New Mexico, alleging Papa Texas had violated the Fair Labor Standards Act (FLSA) and other laws. Papa Texas moved to dismiss and compel arbitration. Before responding to that motion, Myers agreed to arbitrate the matter. As part of that agreement, the parties stipulated to dismissal of the lawsuit without prejudice. The case was therefore closed in August 2023.

### C.  Settlement Negotiations & AAA's Termination of the Arbitration

Myers filed an arbitration demand with AAA and paid his share of the filing fee in mid-September 2023.  AAA then sent a case-opening letter to both parties explaining that Papa Texas's share of the filing fee was due on October 9.  In boldface type, the letter warned that, under the applicable arbitration rules, "the employer's full share [of the filing fee] is due as soon as the employee meets his or her filing requirements, even if the matter settles or is withdrawn.  This notice confirms that employee's filing requirements have been met."  R. vol. I at 184 (emphasis and internal quotation marks removed).

At this point, Papa Texas began active settlement discussions with Myers.  On October 9 (Papa Texas's due date to pay its share of the filing fee), it solicited and received from AAA an extension until October 24, in light of ongoing settlement discussions.

On October 20, Myers accepted a settlement offer from Papa Texas.  Believing the matter would indeed settle, Papa Texas did not pay the AAA filing fee on October 24.  This prompted an October 25 e-mail from AAA stating that if Papa Texas did not pay the filing fee by November 1, AAA would close the file.

On November 9, AAA e-mailed the parties to state that it had closed its file.  It further stated,

> Because the employer has failed to comply with the Employment Arbitration Rules and the Employment Due Process Protocol, we may decline to administer any future employment matter involving [Papa Texas].  We ask that

3

[Papa Texas] remove our name from its arbitration agreements so there is no confusion to the public.

R. vol. I at 194.

### D.    Failure of Settlement & Myers's Second Lawsuit

By December 2023, it became clear the parties would not reach a settlement after all. Thus, that same month, Myers filed another lawsuit in the District of New Mexico. The second suit was drawn to a different district judge.

The parties dispute whether this second lawsuit was materially the same as the first. In any event, Papa Texas moved to enforce the purported settlement, or, alternatively, to compel arbitration. Myers denied that the settlement negotiations had resulted in an enforceable settlement agreement. As to arbitration, Myers argued that Papa Texas had waived its right to arbitration because the previous arbitration ended in closure based on Papa Texas's failure to pay the filing fee.

As to settlement, the district court concluded there had been no meeting of the minds, so no agreement. The court accordingly denied that part of Papa Texas's motion. As to arbitration and waiver, the district court concluded Papa Texas's failure to pay the filing fee did not amount to waiver of the right to arbitrate. The court further concluded, however, that the arbitration agreement's designation of AAA was integral to the agreement. And, "given [AAA's] previous communications with the parties," it was "unclear whether the AAA will decline to accept the arbitration in this case." R. vol. I at 246. The court therefore ordered the parties to

"submit this matter to arbitration" so they could "determine whether arbitration will be accepted by the AAA." *Id.*

Following the district court's order, Myers e-mailed AAA, "respectfully request[ing] a determination from AAA as to whether it will arbitrate this matter despite the previous course of litigation and administrative closure." *Id.* at 252. Myers immediately added, however, that he did not consent to reinstate the arbitration. AAA initially re-opened the case under a new case number but soon closed it given Myers's refusal to consent.

Myers then returned to district court and moved to lift the stay. Myers asserted that, in light of AAA's refusal to go forward with a new case absent consent, "the arbitration proceeding is now in default and the Court is no longer required under the Federal Arbitration Act to compel arbitration." *Id.* at 250; *see also* 9 U.S.C. § 3 (directing courts to stay litigation over matters covered by an arbitration agreement so long as "the applicant for the stay is not in default in proceeding with such arbitration"). Papa Texas countered that it should not be deemed in default, and it cross-moved to enforce the arbitration agreement by compelling Myers to express his consent to AAA.

The district court ruled for Myers. It concluded Papa Texas had defaulted by failing to pay the filing fee in the first arbitration, leading to closure of that proceeding. It further concluded that, in light of Papa Texas's default, Myers had no duty to consent to a second proceeding, so the court would not order him to consent.

5

The court therefore lifted the stay and proceeded with the litigation. Papa Texas timely appealed that order, leading to this proceeding.

## II.    STANDARD OF REVIEW

"We review a district court's decision as to default of arbitration *de novo* but defer to the district court's underlying factual findings. We review the factual findings of a district court for clear error." *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1293 (10th Cir. 2015) (brackets, citation, and internal quotation marks omitted).

## III.    ANALYSIS

### A.    Myers's Lack of Consent

At the outset, we note a fundamental practical problem, namely, AAA refuses to act as arbitrator absent new consent from Myers. No party claims the district court may order AAA to accept the arbitration anyway. Papa Texas's proposed solution is an order requiring Myers to tell AAA that he consents. Myers argues that courts have no authority to order such consent.

The Federal Arbitration Act (FAA) states that a district court may enter "an order directing that . . . arbitration proceed in the manner provided for in [an arbitration] agreement." 9 U.S.C. § 4. We will presume, for purposes of this case, that this language gives the district court authority to order a party to provide the consent required by an arbitration organization. But we note that such an order does not seem necessary given how the FAA treats the issue of stays pending arbitration.

6

Section 3 of the FAA provides that *if* the district court is "satisfied that the issue involved in [a suit before it] is referable to arbitration," *then* the court "*shall*[,] on application of one of the parties[,] *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provid[ed that] the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3 (emphasis added).  Under this structure, and assuming no default, a district court need not order a claimant to consent to arbitration.  The stay order itself guarantees that the claimant's case will go nowhere in the district court until the arbitration "has been had," *id.*  Thus, if the claimant still wants relief, he or she will go to arbitration.  It is irrelevant whether that is characterized as consenting to arbitration or merely following the terms of the arbitration agreement.  Arbitration is the claimant's only option, aside from settling or abandoning the claims.

There is no dispute that Myers's FLSA and related claims are "referable to arbitration under [the parties'] agreement," *id.*  The only question is whether Papa Texas is "in default in proceeding with such arbitration," *id.*  If Papa Texas is not in default, the district court should have continued the stay pending arbitration, thus putting Myers to the choice of arbitrating, abandoning, or settling his claims.  If Papa Texas is in default, the district court correctly lifted the stay.  We therefore turn to the default question.

**B.    Default in Arbitration & Papa Texas's "New Case" Theory**

"Failure to pay arbitration fees constitutes a 'default' under § 3." *Pre-Paid Legal*, 786 F.3d at 1294. This straightforward holding would seem to end the matter.[1]

Papa Texas argues, however, that the circumstances of this case bring it outside of *Pre-Paid Legal*'s holding. Specifically, Papa Texas asserts that Myers's second lawsuit is a new, meaningfully different case, and nothing in *Pre-Paid Legal* suggests that a § 3 default "nullifies that same arbitration agreement forever and ever." Aplt. Opening Br. at 11. Myers, for his part, asserts that "breach of the arbitration agreement does, in fact, invalidate the agreement 'forever and ever.'" Aplee. Resp. Br. at 21. Implicitly, this seems to be an argument over whether the term "such arbitration" in § 3's qualifier ("provid[ed that] the applicant for the stay is not in default in proceeding with such arbitration") constrains the effect of a default finding just to the dispute that was submitted to arbitration, or whether default essentially strikes the arbitration clause from the parties' contract.

We need not resolve this issue. For purposes of this disposition, we may assume that *Pre-Paid Legal* only applies to further arbitration of the dispute previously submitted to arbitration. Even under this assumption, we will not consider

---

[1] *Pre-Paid Legal* also says that this same circumstance—failing to pay arbitration fees and causing the arbitration proceeding to close—may satisfy the condition that "the arbitration 'ha[d] been had in accordance with the terms of the agreement,' 9 U.S.C. § 3, [thus] removing the § 3 requirement for the district court to stay the proceedings." 786 F.3d at 1294. In this case, the district court found default, and did not discuss whether the arbitration "ha[d] been had." We therefore focus on default.

8

Papa Texas's claim that Myers's second lawsuit is a substantively different dispute than the one that previously went to arbitration.[2] On that, we agree with Myers that Papa Texas forfeited the argument.

Papa Texas does not direct us to any place in the record where it asserted that Myers's new lawsuit was something meaningfully different from the dispute that had previously gone to arbitration. Papa Texas insists it "told the District Court below that Myers never submitted the *new* matter to the AAA," Aplt. Reply Br. at 6, but the only portion of the record it cites in support of this statement is the opening page of its reply in support of enforcing the arbitration agreement. That page repeatedly talks about the need to "reopen" the arbitration. *See* Aplt. App. vol. II at 325. Arguing that the first arbitration should be reopened is inconsistent with the position that this is a substantively new dispute.

Papa Texas insists, however, that the district court itself concluded Myers's second lawsuit was a substantively new dispute, so the issue is ripe for our review. *Cf. Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019) ("[The] forfeiture rule does not apply when the district court explicitly considers and resolves an issue of law on the merits."). This argument distorts the record.

---

[2] Papa Texas says the new lawsuit was "mostly the same as the old case." Aplt. Opening Br. at 5. However, the old complaint alleged that "[Myers] and similarly situated delivery drivers have been paid minimum wage," R. vol. II at 441, ¶ 55, whereas the new complaint alleged that "[Myers] and similarly situated delivery drivers have ostensibly been paid minimum wage," R. vol. I at 17, ¶ 56. Papa Texas argues that the addition of the word "ostensibly" creates a "critical" difference. Aplt. Opening Br. at 5.

As noted above, Papa Texas responded to Myers's second lawsuit with a motion to enforce the parties' purported settlement, or, alternatively, to compel arbitration. At oral argument on that motion, the district court informed the parties that it was skeptical it had "jurisdiction to enforce a settlement agreement from a different case," referring to the first lawsuit. Aplt. App. vol. II at 360. In that context, the district court further stated, "I do think it's a new case." *Id.* at 361.

Papa Texas quotes this snippet in support of its argument, *see* Aplt. Opening Br. at 10, but leaves out everything that follows. The full quote shows the district court believed the second lawsuit was a different case for purposes of enforcing a settlement agreement, even though the claims appeared to be identical:

> I do think it's a new case. *I think that the claims might be the same*, Plaintiff's the same, Defendant's the same, but I really don't believe that I can—I would have the authority or the jurisdiction to enforce a settlement agreement from a prior case *even if it's the same claims*.

Aplt. App. vol. II at 361 (emphasis added).

Moreover, the district court later admitted a misunderstanding on this issue. It had assumed that the parties had reached a settlement, or at least discussed settlement, before dismissal of the first lawsuit. But counsel for Myers walked the court through the chronology to show that settlement discussions only began after the parties dismissed the first lawsuit. This led the district court to conclude that it "was wrong when [it] said that the settlement discussions were taking place during the time that this was a different case." *Id.* at 371. "In fact," the court continued, "that

case was already gone." *Id.* And this realization was important to the court's oral ruling on Papa Texas's request to enforce the purported settlement:

> I have to tell you, I—right now, I'm inclined to find that there was no meeting of the minds and there was no contract. I'll have to think more about what it means that all of this was going on. I guess it really doesn't matter. There was no case at the time, then it would pertain to the case that's before me now because *these are the same claims*. So let me just say this, so we can cut everybody's time short: I'm going to deny the motion to enforce the settlement agreement.

*Id.* at 381–82 (emphasis added). The district court later memorialized this ruling in a written order addressing both of Papa Texas's requests for relief (*i.e.*, enforcing the settlement or compelling arbitration). That order recounted the history of the parties' dispute, including the following: "On December 08, 2023, Plaintiff filed the instant lawsuit, renewing its claims against the same Defendants . . . ." Aplt. App. vol. I at 228.

In short, the district court's view was the opposite of what Papa Texas represents. The district court repeatedly expressed its view that the two cases were substantively the same.

For all these reasons, we conclude Papa Texas forfeited its argument that *Pre-Paid Legal* does not apply because Myers's second lawsuit is a substantively new dispute.

### C.    Waiver of Arbitration vs. Default in Arbitration

Papa Texas further asserts that waiver of the right to arbitrate and default in arbitration are effectively the same thing. Therefore, because the district court

11

already found lack of waiver, the same conclusion should have carried over to the

default question.  We disagree.

When the district court addressed waiver, it was required to consider several

factors:

> (1) whether the party's actions are inconsistent with the
> right to arbitrate; (2) whether the litigation machinery has
> been substantially invoked and the parties were well into
> preparation of a lawsuit before the party notified the
> opposing party of an intent to arbitrate; (3) whether a party
> either requested arbitration enforcement close to the trial
> date or delayed for a long period before seeking a stay;
> (4) whether a defendant seeking arbitration filed a
> counterclaim without asking for a stay of the proceedings;
> (5) whether important intervening steps [e.g., taking
> advantage of judicial discovery procedures not available in
> arbitration] had taken place . . . .

*Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988) (internal

quotation marks omitted) (bracketed insertion in original).[3]  Papa Texas says that "no

similar clear framework for default exists," but "the cases [about default] in fact do

look at those same factors."  Aplt. Opening Br. at 18.

The only decision from this circuit Papa Texas cites in support of this assertion

is *Pre-Paid Legal*, in which we supposedly analyzed default by "considering why a

party did not pay the arbitration fee."  *Id.*  We cannot find any mention in *Pre-Paid*

---

[3] As the district court recognized, *see Myers v. Papa Texas, LLC*, 749 F. Supp.
3d 1165, 1177 n.3 (D.N.M. 2024), *Peterson* prescribes a sixth factor regarding
prejudice to the opposing party, but the Supreme Court has abrogated that inquiry,
*see Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–19 (2022) (holding that
consideration of prejudice to the opposing party is an impermissible factor because it
sets up a waiver standard different from how waiver is addressed outside the
arbitration context).

*Legal* of why the defendant failed to pay his share of the arbitration fee. The closest we came was to point out that the defendant "did not show he was unable to afford payment, ask the arbitrators to modify his payment schedule, or move for an order requiring [the plaintiff] to pay his share for him so that arbitration could continue. Instead, by refusing multiple requests to pay, he allowed arbitration to terminate." 786 F.3d at 1294. Viewed in isolation, this perhaps suggests that if the defendant *had* asked the arbitrators to modify his payment schedule, or if he *had* asked the arbitrators to order the plaintiff to pay his share, then the implication of such requests (he could not afford the fees) might matter in the default analysis. But *Pre-Paid Legal* never says as much. To the contrary, immediately after the passage just quoted, we announced—without qualification—that nonpayment equals default: "Failure to pay arbitration fees constitutes a 'default' under § 3. Because [the defendant] failed to pay his arbitration fees, he was in 'default.'" *Id.*

We have also examined the extra-circuit decisions that Papa Texas has cited in support of analyzing default through a waiver analysis. *See* Aplt. Opening Br. at 18. Some of these cases merely state that waiver is one type of default that may justify refusing a stay under § 3. Other cases appear to treat the concepts of default and waiver as synonymous, but these cases involved the question of whether a party gave up its right to arbitrate by litigating in another forum first—a matter this court would treat under the waiver heading, *see Peterson*, 849 F.2d at 467–68.

Alternatively, Papa Texas argues this court should adopt a totality-of-the-circumstances test for analyzing default. In support, he cites decisions from the

13

Eleventh Circuit. *See* Aplt. Opening Br. at 19–20. We have reviewed these decisions and we conclude they either conflict with *Pre-Paid Legal* (by treating waiver and default as indistinguishable) or they cut against Papa Texas's position by: (i) invoking a totality-of-the-circumstances test for default, and then (ii) concluding that AAA's refusal to arbitrate based on a party's noncompliance with its rules is the sole circumstance needed for the district court to find default. If we adopted such a rule, it would be an alternative basis to affirm the district court, not to reverse it.

Papa Texas also argues that *Pre-Paid Legal* endorsed the Ninth Circuit's approach to default as illustrated in *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003). In *Sink*, the Ninth Circuit specified that "the question of whether [a party] defaulted in arbitration [is] one of fact," and therefore reviewed "for clear error." *Id.* at 1199. The court found that the district court did not clearly err in light of the evidence that the non-paying party had received multiple notices of the payment-due date, never expressed inability to pay, never made alternate arrangements, and ended up receiving more than the allotted time. *See id.*

*Pre-Paid Legal* cites *Sink*, but not as a direct endorsement of its approach to determining whether a default occurred. Rather, *Pre-Paid Legal* was addressing the defendant's argument that the arbitrator, not the court, must decide the default question. *See* 786 F.3d at 1295, 1296, 1298. The defendant put forward *Sink* as a case where "[t]he arbitrator's finding of default . . . was dispositive," whereas no similar finding existed in the case then before the court. *Id.* at 1296 (internal quotation marks omitted). We rejected that characterization of *Sink* because, in

14

addition to the arbitrators' default order, the Ninth Circuit "relied on the record,

which showed the defendants had received multiple notices to pay, did not report

inability to pay, and had not made genuine efforts to make alternative arrangements."

*Id.* In other words, we discussed *Sink* in the context of demonstrating that the

defendant's authorities did not dictate that the arbitrator must decide if a party is in

default.

That said, *Pre-Paid Legal*'s analysis of default partly parallels *Sink*'s analysis.

As noted above, *Pre-Paid Legal* mentioned the fact that the defendant did not show

inability to afford payment, did not ask for a new payment schedule, and did not ask

that the plaintiff pay his share of the fees. These are the same type of facts that *Sink*

considered. The difference is that *Pre-Paid Legal* mentioned these facts without

specifying their legal relevance, whereas *Sink* specified that these facts informed its

clear-error analysis of the district court's conclusion that the defendant had defaulted.

In any event, if *Pre-Paid Legal*'s mention of the same types of facts that were

important in *Sink* was meant as an endorsement of *Sink*'s approach, we would still

affirm. As the district court here explained,

> [T]he most important question is whether or not there's
> been a default, and, to me, there clearly has been. [Papa
> Texas], for whatever reason, did not pay the fees. . . .
> I remember seeing the letters [in which AAA warned Papa
> Texas that it needed to pay its share of the fee]. There
> [were] repeated letters asking [Papa Texas] to do it. And
> they just either ignored or asked for extension, I think at
> one point, but they just kind of ignored it.
>
> Now, I know that I indicated [in an earlier order] that that
> was not a waiver of their right to request arbitration, but I

15

> do see these things as different.  Now looking at whether
> or not they violated the rules of the AAA, there's just no
> way you can say they did not.  They defaulted on that.

Aplt. App. vol. II at 429.  Just as *Sink* found no clear error on the facts before it, we find no clear error in this analysis.  In particular, nothing in the record suggests Papa Texas could not afford the arbitration fee.

Finally, Papa Texas argues that "there is no published rule [such as in AAA's rules] that Myers is allowed to veto 'reopening' arbitration, [so] there is no way that such a rule could have been part of the original Arbitration Agreement between Myers and Papa Texas."  Aplt. Opening Br. at 26.  Thus, Papa Texas continues, there was a failure of mutual assent.

This argument does not help Papa Texas.  If there was a failure of mutual assent, then there was no arbitration agreement.  *See State v. McKinley Cnty. Bank*, 252 P. 980, 984 (N.M. 1927) ("There can be no contract where there is no meeting of minds.").  But Papa Texas insists this circumstance instead amounts to a forbidden arbitration-specific procedural rule that allows one party to frustrate arbitration by refusing to consent.  *Cf. Morgan*, 596 U.S. at 419 ("[T]he text of the FAA makes clear that courts are not to create arbitration-specific procedural rules . . . .").  We do not see the connection.  In any event, we have already explained that we assume for purposes of this appeal the district court could order Myers to consent under 9 U.S.C. § 4.  The dispute, however, is not over Myers's conduct, but Papa Texas's, specifically, was it "in default in proceeding with [the] arbitration," 9 U.S.C. § 3?  We agree with the district court that the answer is yes.

16

### D. Waiving the Default Argument

As a concluding alternative argument, Papa Texas invokes a different type of waiver, namely, waiving an argument by intentionally choosing not to present it at the right time. *See United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012) ("Waiver, unlike forfeiture, requires a showing that a known right has been intentionally relinquished or abandoned." (emphasis removed) (brackets and internal quotation marks omitted)). To briefly recap, AAA closed the first arbitration based on Papa Texas's non-payment, Myers re-filed his suit in federal court, Papa Texas in turn moved for a stay pending arbitration, and Myers responded that Papa Texas had waived its right to arbitrate. But critically (in Papa Texas's view), Myers did not then argue for the basic failure-to-pay default that eventually won the day. He saved that argument for after the parties' return from the second attempted arbitration.

Papa Texas asserts this course of events amounts to intentional waiver. It notes that, at oral argument before the district court on the default issue, Myers's counsel admitted they "could have argued under the concept of default [in opposition to Papa Texas's motion to compel arbitration], but we were confident that [nonpayment of the arbitration fees] constituted a waiver," Aplt. App. vol. II at 399, and therefore did not argue for default at that time. Papa Texas claims this explanation meets the waiver standard as stated by *State Farm Mutual Auto Insurance Co. v. Petsch*, 261 F.2d 331, 334 (10th Cir. 1958) ("The constituent elements of waiver are an existing right, knowledge of that right, and an intention to relinquish or surrender it.").

17

The district court rejected Papa Texas's waiver argument. We review that decision for abuse of discretion. *See O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1207 (10th Cir. 2004) (explaining that a district court's finding regarding waiver of an argument by failing to timely raise it is a "fact-intensive question" that this court reviews for abuse of discretion). The district court was well within its discretion to conclude that nothing about Myers's counsel's explanation, or Myers's behavior before raising the default argument, showed an intention to relinquish or surrender the argument. We therefore reject Papa Texas's claim that Myers waived the argument.

## IV.   CONCLUSION

We affirm the district court's decision to lift the § 3 stay in light of Papa Texas's default.[4]

Entered for the Court

Joel M. Carson III<br>Circuit Judge

---

[4] We express no opinion about how this default should affect, if at all, Myers's ability to bring a class or collective action.