FOKKEN, Respondent, v. STATE BANK & TRUST CO. et al, Appellants.

(217 N. W. 512.)

(File No. 6094.)   Opinion filed January 16, 1928.

*Perry F. Loucks,* of Watertown, and *Roy E. Willy,* of Platte, for Appellants.

R. A. Dunham and F. G. Bohri, both of Clark, for Respondent.

BROWN, J. Plaintiff, who was the owner of a half section of land in Clark county, on which there was a mortgage to the Royal Union Life Insurance Company of Des Moines, applied to J. G. Wadsworth & Co. of Sioux Falls for a loan of $5,500, to be secured by a mortgage on the land, for the purpose of paying off the mortgage to the Royal Union Life. The application was transmitted through the State Bank & Trust Company of Watertown, and was so far completed on January 8, 1924, that on that date Wadsworth & Co. transmitted to the State Bank & Trust Company, by check, $5,416.40, that being the amount of the $5,500 loan, less commission and revenue stamps on the mortgage. On January 14th, the State Bank & Trust Company entered on its books a special account headed, the "J. L. Fokken Loan Account," credited the check to this account, and forwarded the check to the First National Bank of Minneapolis, where, on January 15th, it was credited to the account of the State Bank & Trust Company, and was paid by the Minnehaha National Bank, on which it was drawn. On January 17, 1924, the State Bank & Trust Company carried an account with the First National Bank of Minneapolis, and owed that bank on bills payable the sum of $14,821, and, as collateral security for such indebtedness, had pledged with the Minneapolis bank promissory notes amounting to nearly $30,000.

On January 14th the State Bank & Trust Company sent to the Royal Union Life Insurance Company a draft on the First National Bank of Minneapolis for $5,333.33, in payment of the amount due on the insurance company's mortgage, and on the 17th of that month this draft was presented to the drawee, and payment refused.

On January 18th the State Bank & Trust Company suspended business, and was taken in charge, for the purpose of liquidation, by the superintendent of banks of this state.

On January 17th, when the Minneapolis Bank refused payment of the draft, the State Bank & Trust Company had on deposit in the Minneapolis bank approximately $12,000, which included the proceeds of the $5,416.40 check transmitted to it by

the State Bank & Trust Company on January 14th. After the suspension, the Minneapolis bank charged the account of the State Bank & Trust Company with the amount of its indebtedness, and transmitted to the examiner in charge the balance, $3,818.73, together with all the collateral which it held as security for the indebtedness of the State Bank & Trust Company. At the time of the trial of this action, the examiner in charge had collected over $18,000 on this collateral, all of which, together with the $3,818.73, had been placed in the general cash assets of the State Bank & Trust Company in control of the superintendent of banks, which general cash assets, at the time of the trial, amounted to approximately $29,000.

Plaintiff brought this action to establish a trust in his favor to the amount of $5,416.40, with interest from January 8, 1924, in the general cash assets of the State Bank & Trust Company, on the theory that that amount of his money had been traced directly into such general cash assets, and recovered judgment for that amount, with a direction that the same be paid pro rata with all other preferred claims, and, if not satisfied in full as a preferred claim, then that the balance share pro rata with the common claims against the State Bank & Trust Company, and from this judgment and an order denying a new trial defendants appeal.

Appellants contend that the effect of the transaction was to create an ordinary deposit in the State Bank & Trust Company in favor of Wadsworth & Co.; that the relation of debtor and creditor arose between Wadsworth & Co. (or Fokken) and the State Bank & Trust Company when the Wadsworth check was received by the State Bank & Trust Company; and they also contend that the plaintiff, Fokken, has no cause of action at all, but that Wadsworth & Co. alone have a right of action against the State Bank & Trust Company, and they only have a right to share pro rata with ordinary creditors.

■ Respondent had given to Wadsworth & Co. his note and mortgage for the amount of the loan, and it was his money that came into the hands of the State Bank & Trust Company when it received the check of Wadsworth & Co., and the contention that respondent has no cause of action cannot be sustained.

■ The contention that the receipt of the check by the State Bank & Trust Company and the opening of the account by

it headed, "J. L. Fokken Loan Account," constituted an ordinary deposit, and created the relation of debtor and creditor between Fokken and the bank, is likewise untenable. Fokken made no deposit. The money was received by the bank for the specific purpose of paying off the mortgage of the Royal Union Life Insurance Company, and turning the balance to Fokken, and its deposit in the Minneapolis bank to which the State Bank & Trust Company was indebted, and where it knew the deposit could be applied by that bank in discharge of its indebtedness, was a conversion of Fokken's money. When the Minneapolis bank applied that money in payment of such indebtedness, and released the collateral which it held as security for that indebtedness, that collateral became impressed with a trust in favor of Fokken to the extent to which his money had contributed to the payment of the indebtedness secured thereby.

As to the $3,818.73 in cash which was returned by the Minneapolis bank to the superintendent of banks of this state, that must be presumed to be Fokken's money. In Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 N. W. 21, 86 Am. St. Rep. 769, it is said:

"A presumption governing modern courts in tracing a trust fund wrongfully mingled by a trustee with his own funds, out of which aggregate he has made disbursements in the due course of business, is that he used his own money in preference to embezzling that of others."

Applying that rule in the present case, we must conclude that no more of Fokken's money was used in discharging the obligation of the State Bank & Trust Company to the Minneapolis bank than was necessary to make up the balance due the Minneapolis bank after applying all of the previous deposit of the State Bank & Trust Company, and that the $3,818.73 was Fokken's money.

That part of Fokken's money which, under the presumption referred to in Plano Mfg. Co. v. Auld, had been used to discharge the debt of the State Bank & Trust Company to the Minneapolis bank, contributed to the release of the securities held by the Minneapolis bank, and to that extent those securities became impressed with a trust in Fokken's favor. Fokken's money, to that extent, was thus directly traced into those securities which were returned to the defendant, superintendent of banks, and to that extent he should be required to account to Fokken for the money he realized from such securities.

■ The examiner in charge collected from this collateral, and placed in the general assets of the State Bank & Trust Company, an amount far in excess of the amount of respondent's claim, and the trial court rightly found that the general assets of the State Bank & Trust Company became impressed with a trust in favor of Fokken for $5,416.40, together with interest from the time this money was received by the State Bank & Trust Company.

The examiner in charge testified that, except Fokken's, "there were no other claims filed against the State Bank & Trust Company wherein the claimants allege that their alleged trust money went into the collateral or the money received from the First National Bank of Minneapolis."

This testimony is undisputed. It thus appears that the court would have been warranted in rendering judgment in favor of plaintiff for the amount of his claim to be paid out of the general assets in the control of the superintendent of banks, without regard to any other preferred claims, since Fokken's money alone was directly traced into the $3,818.73 in money, and the collateral returned by the Minneapolis bank.

We do not regard our conclusion in this case as conflicting with the decision in Birch v. International State Bank, 50 S. D. 60, 208 N. W. 167.

In the Birch Case plaintiff was denied the status of a preferred creditor, because it failed to show that any money was collected on its checks and came into the hands of the defendant bank. The checks sent defendant bank were set off in the clearing against checks against it, and, instead of receiving any money in the clearance, it had to pay a large sum to balance its account. "That being so," said the court, "the cash in the bank which was turned over to the superintendent of banks did not represent those collections." But the court quoted as a correct statement of the law the following from Empire State Surety Co. v. Carroll County, 194 F. 593, 114 C. C. A. 435:

"Proof that a trustee mingled trust funds with his own and made payments out of the common fund is a sufficient identification of the remainder of that fund coming into the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, * * * as trust property, because

the legal presumption is that he regarded the law and neither paid out nor invested in other property the trust fund, but kept it sacred."

That very situation is presented in the instant case.

The trustee mingled Fokken's funds with its own in the Minneapolis bank, payment of its indebtedness to that bank was made out of the common fund, the remainder of that fund, $3,818.73, came into the hands of the superintendent of banks, as trust property belonging to Fokken. In like manner, the collateral, having been redeemed in part with the balance of Fokken's money, must be regarded as trust property of his to the extent of that balance.

The situation in the instant case is closely analogous to that in Kimmel v. Dickson, 5 S. D. 221, 58 N. W. 561, 25 L. R. A. 309, 49 Am. St. Rep. 869, where $265 had been left with the bank to be delivered to another for a deed of real property, but the bank wrongfully entered it as a deposit, and failed before getting the deed. In allowing the claim as a preferred claim the court said:

"It is not claimed that the $259 found in the bank's vault when it failed is the very money, or a part of it, deposited by Kimmel, and it is not necessary that it should be so. If the money delivered to the bank had been used by it in its business it had presumably either paid its debts pro tanto, or increased its assets; and the general creditors of the bank would be in the same condition if the money found in its possession were paid over in execution of the trust as though the money deposited had been kept separate, and the identical money received had been so paid over."

It seems to us that, if ever money wrongfully misappropriated by a bank can be "traced into the coffer of the bank," it has been done in the case before us.

There was no error prejudicial to appellants in the judgment of the trial court, and the judgment and order denying a new trial are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.